**UNITED STATES of America, Appellee,**

v.

**Lonnie Gene WESTON, Appellant.**

No. 92–3930.

United States Court of Appeals,
Eighth Circuit.

Submitted April 16, 1993.

Decided Sept. 14, 1993.

Kenneth Osborne, Fayetteville, AR, argued (Brenda Horn Austin, on the brief), for appellant.

Matthew Fleming, Fort Smith, AR, argued (J. Michael Fitzhugh and Matthew W. Fleming, on the brief), for appellee.

Before McMILLIAN and BEAM, Circuit Judges, and SACHS,* Senior District Judge.

McMILLIAN, Circuit Judge.

Lonnie Gene Weston appeals from a final judgment entered in the United States District Court for the Western District of Arkansas finding him guilty, upon a jury verdict, of one count of possession of methylamine with the intent to manufacture methamphetamine in violation of 21 U.S.C. § 841(d)(1). Methylamine is a chemical necessary for the production of methamphetamine, a controlled substance. The district court sentenced Weston to 120 months imprisonment, 2 years of supervised release, an $8,000.00 fine, and a special assessment of $50.00. For reversal, Weston argues that the district court erred in denying his motion for judgment of acquittal because the government failed to prove beyond a reasonable doubt that he intended to use methylamine to manufacture methamphetamine. For the reasons discussed below, we reverse the judgment of the district court.

## BACKGROUND

The evidence at trial revealed that Jim Wilkins, a deputy sheriff with the Madison County, Arkansas, Sheriff's Department, working undercover with a DEA Task Force in northwest Arkansas, met with Weston and arranged to deliver to Weston a gallon of methylamine. On December 4, 1990, Wilkins and Weston met on a rural highway outside Springdale, Arkansas, where Wilkins delivered the gallon of methylamine to Weston. This meeting was observed by other Task Force officers. After the meeting, Weston took the gallon can of methylamine and placed it in a ditch and left the area.

Task Force agents maintained surveillance upon the can of methylamine which was later retrieved by one Curtis Wilson. Wilson took the methylamine to his trailer. Wilson later pleaded guilty to possession of the methylamine with intent to manufacture methamphetamine and agreed to cooperate with the government. At the trial Wilson testified that Weston instructed him to pick up the gallon of methylamine and gave him instructions as to where it was hidden. In exchange for picking up the methylamine, Wilson testified that he was to receive money or drugs from Weston. Wilson also testified that he believed that Weston and a methylamine "cook," Lorenzo Edmondson, were going to make methamphetamine with the methylamine. When the methylamine was recovered from Wilson's trailer, a formula for methamphetamine was discovered. Allen Sawyer, a DEA chemist, testified that methylamine is used to manufacture methamphetamine and that the only legitimate use for methylamine was in the tanning of leather.

At the close of the government's case, Weston made a motion for judgment of acquittal. The district court denied the motion. The jury was given the following instruction:

The crime of possession of a listed chemical with intent to manufacture a controlled substance, as charged in the indictment, has two essential elements, which are:

*One,* the defendant knowingly possessed methylamine; and

*Two,* the defendant intended to use the methylamine to manufacture methamphetamine.

For you to find the defendant guilty of a crime charged in the indictment, the government must prove all of the essential elements of the crime beyond a reasonable doubt; otherwise you must find the defendant not guilty.

On October 26, 1992, Weston was convicted as charged and he renewed his motion for judgment of acquittal. The motion was again denied. On December 17, 1992, the district court sentenced Weston to 120 months im-

* The Honorable Howard F. Sachs, Senior United States District Judge for the Western District of Missouri, sitting by designation.

prisonment, two years of supervised release, an $8,000.00 fine, and a special assessment of $50.00. This appeal followed.

## DISCUSSION

Weston argues that the district court erred in denying his motion for a judgment of acquittal. He argues that the evidence presented at trial was insufficient to find beyond a reasonable doubt that he intended to manufacture methamphetamine. Weston argues that at most the evidence only showed that he possessed the methylamine for a only a matter of moments on December 4, 1990. He contends that while there may have been sufficient evidence for the jury to find that he possessed methylamine, there was no evidence that he intended to manufacture methamphetamine.

The government argues that there was sufficient evidence presented at trial from which the jury could have reasonably concluded that Weston intended to manufacture methamphetamine. The government contends that there was both direct and circumstantial evidence that Weston bought the methylamine from agent Wilkins with the intent to manufacture methamphetamine. We disagree.

When reviewing sufficiency of evidence claims, we must view the entire record in the light most favorable to the government. *United States v. Whitfield*, 874 F.2d 591, 592 (8th Cir.1989); *United States v. Resnick*, 745 F.2d 1179, 1185–86 (8th Cir. 1984). Additionally, we must draw from the facts all reasonable inferences in favor of the government, *United States v. Roberts*, 848 F.2d 906, 908 (8th Cir.), *cert. denied*, 488 U.S. 931, 109 S.Ct. 322, 102 L.Ed.2d 340 (1988); *United States v. Robinson*, 782 F.2d 128, 129 (8th Cir.1986), and resolve all evidentiary conflicts in its favor. *Smalley v. United States*, 798 F.2d 1182, 1188 (8th Cir.1986).

The evidence does not have to exclude every reasonable hypothesis other than guilt, but it simply must be sufficient to convince a jury beyond a reasonable doubt that the defendant is guilty. *United States v. Paul*, 810 F.2d 774, 775 (8th Cir.1987); *United States v. La Guardia*, 774 F.2d 317,

319 (8th Cir.1985). The evidence to support a conviction is sufficient, as a matter of law, if *"any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *United States v. Brown*, 763 F.2d 984, 989 (8th Cir.), *cert. denied*, 474 U.S. 905, 106 S.Ct. 273, 88 L.Ed.2d 234 (1985). However, if the evidence rationally supports two conflicting hypotheses, we cannot disturb the conviction. *United States v. O'Connell*, 841 F.2d 1408, 1424 (8th Cir.1988), *cert. denied*, 488 U.S. 1011, 109 S.Ct. 799, 102 L.Ed.2d 790 (1989).

After carefully reviewing the evidence presented at trial in the light most favorable to the government, we conclude that the evidence was insufficient to support the jury's finding that Weston intended to manufacture methamphetamine. While the evidence indicates that Weston possessed methylamine, the government presented no other evidence from which the jury could have concluded that Weston intended to manufacture methamphetamine. *See United States v. Rogers*, 939 F.2d 591, 595 (8th Cir.1991) (conviction of conspiracy to manufacture methamphetamine upheld because of the existence of manufacturing equipment and chemicals as well as evidence of corroboration); *see also United States v. Dorrough*, 927 F.2d 498, 501 (10th Cir.1991) (defendant's conviction upheld because the evidence indicated that the defendant directed codefendant to bring chemicals and supplies to the manufacturing site and that they agreed to use the material to manufacture amphetamine); *United States v. Beaulieu*, 900 F.2d 1531, 1534 (10th Cir.1990) (conviction for intent to manufacture was upheld because of the existence of manufacturing equipment and the corroboration of the intent to manufacture); *United States v. Cook*, 793 F.2d 734, 735 (5th Cir.1986) (defendant's conspiracy to manufacture a controlled substance was supported by evidence, including expert testimony and the existence of a manufacturing laboratory); *United States v. Peacock*, 761 F.2d 1313, 1316–17 (9th Cir.1985) (defendant's conviction for conspiracy to manufacture a controlled substance was supported by

evidence including manufacturing equipment, manufacturing paraphernalia and empty containers of other necessary chemicals as well as telephone records).

Wilson's testimony was the only evidence from which the jury could have inferred that Weston intended to manufacture methamphetamine. Wilson's belief, however, that the methylamine that Weston bought from agent Wilkins was for the purpose of manufacturing methamphetamine was nothing more than a mere suspicion without basis. Wilson testified that Weston never told him that he, Weston, was going to manufacture methamphetamine. Wilson also testified that he never saw Weston after he picked up the methylamine.

In addition, DEA chemist Alan Sawyer, testified that methamphetamine could not be manufactured with ordinary household items, but that other chemicals in addition to methylamine were necessary. However, no traces of other chemicals necessary for the manufacturing of methamphetamine were found, nor was any laboratory or equipment other than the drug formula found in connection with this case. Finally, there was no evidence that Weston knew how to manufacture methamphetamine nor that Weston knew anyone that who had the knowledge to manufacture methamphetamine.

We recognize that the trier of fact was entitled to be highly suspicious of Weston's conduct, and even to suppose that the methylamine was probably on its way to illegal drug use. Tanning of leather was a most unlikely objective, given Weston's surreptitious conduct, and it also challenges credulity to support that Weston had no knowledge of the illicit use to which the product could be put. On the record presented, however, it would require pure guess-work by the jury to conclude that Weston planned to become directly or indirectly involved in manufacture, rather than supplying someone else who would likely manufacture methamphetamine.

Accordingly, the judgment of the district court is reversed.