STATE of Iowa, Appellee,

v.

**Kirby Joe TRUESDELL, Appellant.**

No. 02–1529.

Supreme Court of Iowa.

May 12, 2004.

Linda Del Gallo, State Appellate Defender, and Nan Jennisch, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Jean C. Pettinger, Assistant Attorney General, Harold L. Denton, County Attorney, and Jerry Vander Sanden, Assistant County Attorney, for appellee.

CADY, Justice.

It is commonly known that some consumer products—such as a variety of over-the-counter cold relief medications—contain chemicals used to manufacture methamphetamine (meth). As a result, our legislature has made it a crime for a person to possess a product containing such chemicals with the intent to use the product to manufacture a controlled substance. This appeal requires us to consider whether a violation of the statute occurs when, without other evidence, a person possesses products containing a controlled substance precursor in a quantity incompatible with normal personal consumption but compatible with the quantity needed to manufacture a standard batch of meth. We conclude substantial evidence did not support

the conviction in this case. We vacate the decision of the court of appeals and affirm the district court judgment and sentence in part, reverse in part, and remand for dismissal of the charge of possession of a precursor with intent to use it to manufacture a controlled substance.

## I. Background Facts and Proceedings

Kirby Joe Truesdell (Truesdell) was arrested on April 17, 2002, after he left a Hy–Vee store in Cedar Rapids with a grocery cart filled with seventy boxes of cold relief medication, together with a few food items, without stopping at the checkout counter to pay for the products. Truesdell entered the store during the early morning hours and placed virtually the entire stock of cold relief medication located on the store shelves into a shopping cart. His bizarre and brazen conduct caused a store employee to call the police, but Truesdell left the store through a back emergency door before they arrived. An assistant store manager observed Truesdell transfer the boxes of cold relief medication from the shopping cart into a Jeep Cherokee parked in the store parking lot. Truesdell then entered the driver's door of the vehicle and the vehicle sped from the parking lot, nearly striking the employees who were approaching the vehicle.

Truesdell was observed a short time later, together with the Jeep Cherokee, at a trailer park located approximately two miles from the Hy–Vee store. The police transported two store employees to the trailer park, where they identified Truesdell as the person who committed the theft. The identification was performed within thirty minutes to an hour from the time Truesdell left the parking lot of the store.

The police arrested Truesdell, and transported him to the county jail. While at the county jail, the police suspected he was intoxicated. His breath smelled of a strong odor of alcohol, his eyes were bloodshot, his pupils were dilated, and his speech was slurred. He was also loud and obstreperous at times. Truesdell declined to perform any sobriety test, and refused to give a breath sample for testing.

The police found the cold relief medication and groceries taken from the Hy–Vee store in the back seat of the Jeep Cherokee. The total value of the merchandise was $372.88. Each box of cold relief medication contained between twelve to forty-eight tablets. The police also discovered that Truesdell had been barred from operating a motor vehicle.

The cold relief medication taken by Truesdell contained pseudoephedrine, a chemical listed as a controlled substance precursor in Iowa Code section 124.401(4)(*b*) (2001). The presence of this chemical in the cold relief medication subjected the product to the prohibited possession provisions of section 124.401(4).[1] Pseudoephedrine is a precursor, or an essential building block, used to manufacture meth, a highly addictive stimulant.

The most common recipe for manufacturing meth calls for 1000 to 1200 60–milligram tablets of cold medication containing pseudoephedrine. This amount of

---

1. Iowa Code section 124.401(4) (2001) provides in relevant part:

A person who possesses any product containing any of the following commits a class "D" felony, if the person possesses with the intent to use the product to manufacture any controlled substance:

. . . .

*b.* Pseudoephedrine, its salts, optical isomers, salts of optical isomers, or analogs of pseudoephedrine.

pseudoephedrine generally produces between one to two ounces of meth. Additional tablets would result in more meth. The quantity of tablets taken by Truesdell from the Hy–Vee store was the equivalent of around 1500 60–milligram tablets.

These facts and others were introduced during the course of a jury trial in this case. Additionally, Truesdell testified that he did not know how meth was manufactured, and further told the jury that he planned to sell the cold relief medication to a friend. Truesdell also testified he consumed beer earlier in the evening, but was sober at the time he was placed in police custody. He admitted to taking the cold relief medication, but testified his cousin actually drove the vehicle from the Hy–Vee parking lot. Other than the possession of the medication, the State introduced no other evidence pointing to Truesdell's involvement in the manufacturing of meth.

The jury found Truesdell guilty of OWI, third offense, possession of precursors with intent to manufacture meth, driving while barred, and theft in the fourth degree. The district court entered judgments and imposed sentences for all four convictions. Truesdell appeals from the judgment and sentence entered for the OWI and the possession of precursors.

On appeal, Truesdell asseverates there was insufficient evidence to support the convictions. He points to the absence of any evidence that he was intoxicated during the time he was observed operating a motor vehicle. He also claims there was no evidence to show he intended to use the cold relief medication to manufacture meth. In response to the State's argument that these alleged errors were not properly preserved at trial through a specific motion for judgment of acquittal, Truesdell asserts his trial counsel was ineffective for failing to specifically identify

the insufficiency of the evidence to support the convictions in making the motion.

We transferred the case to the court of appeals. It found Truesdell waived his claim of insufficient evidence by raising it for the first time on appeal. Yet, it decided to preserve the claim of ineffective assistance of counsel for postconviction relief. We granted further review.

## II. Scope of Review.

"We review claims of ineffective assistance of counsel de novo." *State v. Hischke,* 639 N.W.2d 6, 8 (Iowa 2002). Our review of claims of insufficient evidence to support a conviction is for correction of errors at law. *State v. Thomas,* 561 N.W.2d 37, 39 (Iowa 1997). Substantial evidence exists to support a verdict when the record reveals evidence that a rational trier of fact could find the defendant guilty beyond a reasonable doubt. *Id.* In making this determination, "[w]e view the evidence in the light most favorable to the verdict," including all reasonable inferences that may be deduced from the record. *State v. Gay,* 526 N.W.2d 294, 295 (Iowa 1995).

## III. Preservation of Error.

To preserve error on a claim of insufficient evidence for appellate review in a criminal case, the defendant must make a motion for judgment of acquittal at trial that identifies the specific grounds raised on appeal. *See State v. Crone,* 545 N.W.2d 267, 270 (Iowa 1996). In this case, trial counsel for Truesdell moved for a judgment of acquittal at the close of the State's case and again at the close of all the evidence. However, he failed to specifically raise the sufficiency of the evidence claim now raised on appeal. Thus, error was not preserved.

The failure of trial counsel to preserve error at trial can support an inef-

fective assistance of counsel claim. Ordinarily, ineffective assistance of counsel claims are best resolved by postconviction proceedings to enable a complete record to be developed and afford trial counsel an opportunity to respond to the claim. *Berryhill v. State*, 603 N.W.2d 243, 245 (Iowa 1999). Yet, in some instances, the appellate record can be adequate to address the claim on direct appeal. *Id.* at 246. When the record is adequate, the appellate court should decide the claim on direct appeal. *See State v. Rubino*, 602 N.W.2d 558, 563 (Iowa 1999). Preserving ineffective assistance of counsel claims that can be resolved on direct appeal wastes time and resources.

■ A claim of ineffective assistance of trial counsel based on the failure of counsel to raise a claim of insufficient evidence to support a conviction is a matter that normally can be decided on direct appeal. *See State v. Scalise*, 660 N.W.2d 58, 62 (Iowa 2003). Clearly, if the record in this case fails to reveal substantial evidence to support the convictions, counsel was ineffective for failing to properly raise the issue and prejudice resulted. On the other hand, if the record reveals substantial evidence, counsel's failure to raise the claim of error could not be prejudicial. Consequently, the claim of ineffective assistance of counsel in this case can and should be addressed on direct appeal.

## IV. Sufficiency of Evidence for OWI.

■ The crime of operating while intoxicated has two elements. The state must first prove the defendant operated a motor vehicle. Iowa Code § 321J.2. Second, the state must prove the defendant was, at the time, "under the influence of an alcoholic beverage or other drug," or some combination, or had an excessive blood alcohol level. *Id.* Truesdell does not argue there was insufficient evidence to show he

was under the influence or that he operated a motor vehicle. Instead, he asserts there was insufficient evidence to show he was under the influence while he operated a motor vehicle. He points out that the witnesses who observed him driving a vehicle and the police officers who later arrested him at the trailer park did not testify to any facts at trial concerning his state of intoxication. Consequently, he claims the evidence in the case only showed he was under the influence while at the jail.

Truesdell correctly argues that the State must establish that he was intoxicated at the time he operated a motor vehicle. Nevertheless, the record reveals substantial evidence to support such a finding in this case.

■ We have previously said that a person is "under the influence" when the consumption of alcohol affects the person's reasoning or mental ability, impairs a person's judgment, visibly excites a person's emotions, or causes a person to lose control of bodily actions. *See State v. Dominguez*, 482 N.W.2d 390, 392 (Iowa 1992). In this case, the jury could have believed Truesdell's unusual and audacious conduct in the grocery store showed an impaired judgment and ability to reason. Truesdell also drove the vehicle at a high rate of speed, and nearly struck store employees in the parking lot. Additionally, Truesdell acknowledged he consumed alcohol prior to the incident and police observed numerous signs of alcohol intoxication after he was arrested an hour or so after he was observed operating the vehicle. Under this record, there was substantial evidence to support a finding that Truesdell was under the influence of an alcoholic beverage at the time he operated a motor vehicle.

## V. Sufficiency of the Evidence for Possession of a Precursor With Intent.

The operative element of the possession of a precursor crime under examination in this case requires the State to establish beyond a reasonable doubt that Truesdell possessed the cold relief medication "with the intent to use the product to manufacture any controlled substance." Iowa Code § 124.401(4). Truesdell argues that the State was required, and failed, to present evidence that he intended to manufacture meth.

Before tackling this issue, it is necessary to examine the intent element in section 124.401(4). Although we have found sufficient evidence to support the intent element of the statute in a prior case, we have never fully considered the meaning of the "intent to use the product to manufacture any controlled substance" language. *See State v. Heuser,* 661 N.W.2d 157, 166 (Iowa 2003); Iowa Code § 124.401(4).

 "Our goal in construing statutes is to ascertain ... legislative intent." *Locate.Plus.Com., Inc. v. Iowa Dep't of Transp.,* 650 N.W.2d 609, 616 (Iowa 2002). We apply statutes as written by our legislature, and resort to our rules of construction in the event of an ambiguity. *State v. Albrecht,* 657 N.W.2d 474, 479 (Iowa 2003). An ambiguity in a criminal statute is normally resolved in favor of the defendant. *State v. Maher,* 618 N.W.2d 303, 305 (Iowa 2000).

In this case, we observe that our legislature very recently amended section 124.401(4). *See* 2004 Iowa Acts ch. —— (S.F. 2101, 80th General Assemb., effective July 1, 2004). Under the amendment, the intent element is changed to prohibit possession of a product "with the intent *that the product be used* to manufacture any controlled substance." *Id.* The legislature removed the phrase "to use the product"

and replaced it with the phrase "that the product be used." *Id.*

 A change in a statute can indicate either intent by the legislature to change the law or intent to clarify the original statute. *Tiano v. Palmer,* 621 N.W.2d 420, 423 (Iowa 2001). This observation is important in this case because an intent to change the statute under consideration in this case would be consistent with the view that the intent element of the prior statute was limited to an intent that the defendant use the product to manufacture a controlled substance.

 Generally, a material modification of the language of a statute gives rise to "a presumption that a change in the law was intended." *Midwest Auto. III, LLC v. Iowa Dep't of Transp.,* 646 N.W.2d 417, 425 (Iowa 2002); *see* 1A Norman J. Singer, *Statutes and Statutory Construction* § 22.1, at 240–41 (6th ed.2002). The existence of this presumption is enhanced "when the amendment follows a contrary ... judicial interpretation of an unambiguous statute." *Midwest Auto. III, LLC,* 646 N.W.2d at 425.

In this case, the Iowa Court of Appeals filed an unpublished decision on January 29, 2003, that held the intent element of section 124.401(4) is limited to an intent by the accused to use the product to manufacture a controlled substance. *See State v. Pickerell,* 662 N.W.2d 371 (Iowa Ct.App. 2003) (unpublished table decision, full text available at 2003 WL 183392). Moreover, the court of appeals specifically found that the statute was unambiguous. *See id.* We think these factors support a presumption that our legislature intended to change the statute by the subsequent amendment. We also observe that the State in this case did not argue on appeal that section 124.401(4) should be broadly read to in-

clude an intent that the product be used to manufacture a controlled substance.[2]

■■■ As a legislative change, the amended statute is applied prospectively. *See* Iowa Code § 4.5; *Frideres v. Schiltz,* 540 N.W.2d 261, 264 (Iowa 1995). This means the conduct of Truesdell in this case must be judged under the statute that existed at the time of the offense. We conclude this statute required the defendant intend to use the product to manufacture a controlled substance. *See* Iowa Code § 124.401(4).

We acknowledge the quantity of cold relief medication possessed by Truesdell was indicative of criminal activity. The quantity was strong circumstantial evidence that the product was to be used to manufacture meth. However, the statute under which Truesdell was charged is directed at the intent of the possessor to use the product to manufacture a controlled substance, not the mere knowledge or belief of the possessor that the product would be used to manufacture a controlled substance. This is a critical distinction because the evidence in this case equally supports two reasonable inferences pertaining to the possessor's state of mind, yet only one is covered under the statute. First, the quantity of cold medication possessed in this case is circumstantial evidence that Truesdell himself intended to manufacture meth. Second, the quantity of cold medication possessed is circumstantial evidence that Truesdell reasonably knew the cold medication would be used by another to manufacture meth.[3] The first inference is evidence that supports a conviction under the statute, but the second is not.

■■■ Inferences drawn from the evidence must raise a fair inference of guilt on each essential element, including the element of intent. *See State v. Speicher,* 625 N.W.2d 738, 741 (Iowa 2001). Inferences that do no more "than create speculation, suspicion, or conjecture" do not create a fair inference of guilt. *State v. Webb,* 648 N.W.2d 72, 76 (Iowa 2002). Under these standards, when two reasonable inferences can be drawn from a piece of

**2.** In *State v. Pickerell,* 662 N.W.2d 371 (Iowa Ct.App.2003) (unpublished table decision, full text available at 2003 WL 183392), our court of appeals observed:

> We think the logical interpretation of the phrase "person possesses with the intent to use" is that the possessor must intend to personally "use" the precursor, that is be personally involved in the manufacturing process. To interpret this statute as the state urges would require us to read the statute as if it stated, "if the person possesses with the intent *the product be used* to manufacture any controlled substance."

The emphasized phrase comtemplated by the court of appeals is the exact phrase adopted by our legislature in the amended statute. *See* 2004 Iowa Acts ch. —— (S.F. 2101, 80th General Assemb., effective July 1, 2004). We also observe that federal courts have interpreted 21 U.S.C. § 841(d)(1) (2000), which, like Iowa Code section 124.401(4), prohibits the possession of certain listed chemicals "with the intent to use the product to manufacture" illegal drugs, to require that the possessor intend to directly or indirectly engage in the manufacture. *Compare United States v. Weston,* 4 F.3d 672, 674–75 (8th Cir.1993) (interpreting 21 U.S.C. § 841(d)(1)), *with United States v. Anderson,* 61 F.3d 1290, 1295 n. 3 (7th Cir.1995) (interpreting 21 U.S.C. § 841(d)(2), which prohibits "possess[ion] or distribut[ion] [of] a listed chemical knowing, or having reasonable cause to believe, that the listed chemical will be used to manufacture a controlled substance....").

**3.** The State did not prosecute Truesdell under an aiding and abetting theory, or under a conspiracy theory. Additionally, we do not believe possession of cold medication with the intent to deliver it to a meth manufacturer would fall within the "intent to use the product to manufacture any controlled substance" language. *See* Iowa Code § 124.101(16) (defining the term "manufacture" for purposes of chapter 124).

evidence, we believe such evidence only gives rise to a suspicion, and, without additional evidence, is insufficient to support guilt. *See Holder v. State,* 124 S.W.3d 439, 444 (Ark.2003); *Commonwealth v. Williams,* 54 Mass.App.Ct. 236, 764 N.E.2d 889, 897–98 (2002). In such a situation, a jury would necessarily be required to rely upon conjecture to reach a verdict of guilt. *See Speicher,* 625 N.W.2d at 742–43 (presence of two individuals together at the scene of a meth lab sufficient to infer knowledge of manufacturing, but insufficient to infer conspiracy to manufacture). Some other evidence of guilt is required to support a conviction.

We found substantial evidence to support a conviction of possession of a precursor with intent to manufacture meth in violation of Iowa Code section 124.401(4) based upon the possession of a large quantity of cold relief tablets containing pseudoephedrine in *State v. Heuser,* 661 N.W.2d at 166. However, there was also evidence in the case that the defendant possessed lithium batteries, another common product used in meth manufacturing. *Id.* Additionally, there was evidence that the defendant purchased the cold relief products in a surreptitious manner. *See id.* Some of the boxes of medicine in his possession had also been opened. *See id.* at 160. Although there was no direct evidence of manufacturing, we found all the circumstances in the case constituted substantial evidence to support the element of intent to manufacture. *Id.* at 166.

On the other hand, evidence of possession of a precursor, without more, is insufficient to support the essential element of intent to manufacture. In *United States v. Weston,* 4 F.3d 672 (8th Cir.1993), the court found insufficient evidence to support a conviction for possession with intent to manufacture meth based solely upon the defendant's possession of a gallon container of a chemical used to manufacture meth.

Although the possession was highly suspicious, and the circumstances revealed the chemical was most likely going to be used to make illegal drugs, the court found the act of possessing the chemical reasonably indicated the defendant either intended to be involved in the manufacture of meth or intended to supply the product to another to use in the manufacture of meth. *Id.* at 674–75. Consequently, without additional evidence, the jury would have had to speculate to find intent to manufacture. *Id.* at 675.

In this case, Truesdell's possession of a large quantity of the cold relief products supports an inference that some person would use the product to manufacture meth, but there was no additional evidence to show *he* intended to use the product to manufacture meth. Without additional evidence of intent, the jury would have had to guess to reach the conclusion that Truesdell intended to manufacture meth. It was just as likely under the evidence that Truesdell intended for the product to end up in the hands of another person who would manufacture the meth. *See id.* Thus, we conclude that the possession of a large quantity of product, without additional evidence, either direct or circumstantial, is insufficient proof of intent to manufacture under the statute. There was no additional evidence in this case. Accordingly, we find there was insufficient evidence to support a conviction under section 124.401(4). As a matter of law, counsel was ineffective for failing to raise this issue and prejudice resulted.

## VI. Conclusion.

We affirm the judgment and sentence of the district court for OWI third offense, driving while barred, and theft in the fourth degree. We reverse the judgment and sentence for possession of a precursor with intent to manufacture, and remand for dismissal of the charge. The State

failed to establish sufficient evidence to support the conviction of guilt under section 124.401(4).

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

All justices concur except CARTER and LARSON JJ., who dissent.

CARTER, Justice (dissenting).

I dissent.

I do not perceive a sufficient distinction between the facts of this case and the facts of *State v. Heuser*, 661 N.W.2d 157, 166 (Iowa 2003), to warrant a different result. In *Heuser* we held that intent to manufacture could be inferred from the possession of an unusually large amount of pseudoephedrine by one who also possessed lithium batteries that might be of use in the manufacturing process. Much emphasis was placed on the surreptitious manner in which these substances were acquired.

Guilty knowledge is equally inferable in the present case from the fact that the pseudoephedrine was brazenly ripped off in the store and quickly removed from the premises by a speeding automobile. The scenarios in the two cases are equally probative of intent to manufacture a prohibited controlled substance.

The alternative scenario, which the majority proposes as being equally probative, i.e., that the precursor was to be used by another in the manufacturing process, would have been equally plausible in the *Heuser* case. I would affirm the judgment of the district court.

LARSON, J., joins this dissent.