165 P.3d 381 (2007)
STATE of Washington, Appellant,
v.
David F. MISSIEUR, Respondent.
No. 58164-3-I.
Court of Appeals of Washington, Division 1.
August 20, 2007.
As Amended August 31, 2007.
Lisa Danette Paul, Thomas Marshal Curtis, Snohomish County Prosecutor's Office, Everett, for Appellant.
Nielsen Broman Koch PLLC, Dana M. Lind, Seattle, for Respondent.
BECKER, J.
¶ 1 The State appeals the dismissal of charges against David Missieur. The State had charged Missieur with possession of pseudoephedrine with intent to manufacture methamphetamine. He was caught shoplifting approximately 30 boxes of pseudoephedrine cold medicine. More cold medicine was found in his car, along with 64 lithium batteries. The presence of the lithium batteries sufficiently supported the inference that Missieur possessed the pseudoephedrine with intent to manufacture methamphetamine. The trial court erred in dismissing the State's case.

FACTS
¶ 2 According to police reports, David Missieur and Hope Ashworth shoplifted numerous boxes of cold medicine from a grocery store in Edmonds around 2:45 a.m. on June 29, 2005, then drove away. Police officers, alerted by store personnel, pulled their car over a few minutes later. The officers arrested Missieur and Ashworth after observing unopened boxes of pseudoephedrine cold medicine and packages of lithium batteries on the floor and in a duffel bag in the back of the car. The officers counted 78 boxes of cold medicine, including 30 within the coat Missieur had been wearing at the grocery store. There were 64 new, unopened lithium batteries.
¶ 3 The State charged Missieur and Ashworth with the crime of possession of ephedrine or pseudoephedrine with intent to manufacture methamphetamine. Missieur moved to dismiss under State v. Knapstad, 107 Wash.2d 346, 356, 729 P.2d 48 (1986). At a hearing on the motion, a detective trained in methamphetamine manufacture testified that methamphetamine can be made using substances extracted from cold medicine, lithium *383 batteries, and ammonia. He said that, other than in a retail store, he had "never seen large quantities of lithium batteries and cold medicine together without it being related to a lab."[1] Lithium batteries, he explained, contain lithium metal. "Lithium metal is one of only a couple of metals, and it's the most easily obtainable metal, that's needed to convert the ephedrine to methamphetamine".[2]
¶ 4 Missieur argued that the case should be dismissed because the activity of collecting ingredients was not enough to prove an intent to engage in the actual manufacture of methamphetamine. The trial court agreed and granted the motion to dismiss.[3] The State appeals.
¶ 5 We review de novo the trial court's decision to dismiss under Knapstad, viewing the facts and all reasonable inferences in the light most favorable to the State. State v. Jackson, 82 Wash.App. 594, 608, 918 P.2d 945 (1996). To prevail on a motion to dismiss under Knapstad, the defendant must establish that no material facts are in dispute and the undisputed facts are insufficient as a matter of law to establish a prima facie case of guilt. If allegations of material fact are denied or disputed by the State, the trial court must deny the motion. State v. Knapstad, 107 Wash.2d at 356, 729 P.2d 48. We will uphold a trial court's dismissal of an information under Knapstad if no rational factfinder could have found the essential elements of the crime beyond a reasonable doubt. State v. Wilhelm, 78 Wash.App. 188, 191, 896 P.2d 105 (1995).
¶ 6 The charging statute, former RCW 69.50.440(1), made it unlawful for a person to possess pseudoephedrine or other precursor drugs "with intent to manufacture methamphetamine". The statute defines "manufacture" as "the production, preparation, propagation, compounding, conversion, or processing of a controlled substance, either directly or indirectly". RCW 69.50.101(p). A person acts with intent when he acts with the objective or purpose to accomplish a result which constitutes a crime. RCW 9A.08.010(1)(a).
¶ 7 Generally, bare possession of a controlled substance is not enough to support a conviction of possession with intent to manufacture. At least one other factor supporting an inference of intent must exist. The defendant's intent must logically follow as a matter of probability from the evidence. State v. McPherson, 111 Wash.App. 747, 759, 46 P.3d 284 (2002).
¶ 8 In McPherson, the State charged the defendant in Count 1 with manufacturing methamphetamine or alternatively with possession of precursor drugs with intent to manufacture. The court found ample evidence to support either a completed manufacture or intent to manufacture even though not all necessary ingredients were present. McPherson, 111 Wash.App. at 758, 46 P.3d 284.
¶ 9 Sufficient evidence to support a conviction for possession of pseudoephedrine with intent to manufacture was also found in State v. Moles, 130 Wash.App. 461, 466, 123 P.3d 132 (2005), rev. denied, 157 Wash.2d 1019, 142 P.3d 607 (2006) (three consolidated appeals). The court followed McPherson and reiterated the test: "Bare possession of a controlled substance is not enough to support an intent to manufacture conviction; at least one additional factor, suggestive of intent, must be present." Moles, 130 Wash.App. at 466, 123 P.3d 132. The defendants in Moles purchased pseudoephedrine from three different stores within a short period of time. Close to 440 pseudoephedrine tablets, removed from their blister packs, were found loose in the defendants' stolen vehicle. An officer testified that the first stage in the manufacturing process is to acquire pseudoephedrine tablets and then process them. "The fact that so many pills had been removed from the blister packs leads to the only plausible inference: that the defendants *384 were in the process of preparing the pseudoephedrine for the first stage of the manufacturing process." Moles, 130 Wash.App. at 466, 123 P.3d 132. The court held this evidence alone was sufficient to support the jury's finding of intent to manufacture, while noting the presence of other factors that were also indicative of intent to manufacture: possession of a coffee filter with methamphetamine residue, and a pattern of acting in concert with other individuals to make numerous individual purchases of cold medicine in a short period of time.
¶ 10 In contrast to McPherson and Moles, evidence of intent to manufacture was held insufficient in State v. Whalen, 131 Wash. App. 58, 64, 126 P.3d 55 (2005). Whalen was caught stealing seven boxes of a nasal decongestant that contained pseudoephedrine. His conduct violated RCW 69.43.110(2), which makes it a gross misdemeanor to acquire more than three packages of pseudoephedrine in a 24-hour period. Whalen was charged and convicted of the more serious crime of possession of pseudoephedrine with intent to manufacture, a class B felony. Defending the conviction on appeal against a challenge to the sufficiency of the evidence, the State argued that Whalen's intent to manufacture was shown by the amount of pseudoephedrine in his possession and the illicit method of acquisition. The State also argued that "the fact that RCW 69.43.110 limits individuals to the purchase of three packages of pseudoephedrine in a 24-hour period implies an intent to manufacture if one buys or shoplifts more than the legal limit." Whalen, 131 Wash.App. at 63-64, 126 P.3d 55. The court rejected this line of reasoning and held that Whalen's acquisition of more than the legal daily limit of pseudoephedrine could not, by itself, subject him to punishment for the more serious crime. "That there are two distinct offenses with disparate punishments indicates that the legislature did not intend to equate the acquisition of more than three boxes of cold medicine containing pseudoephedrine within a 24-hour period with intent to manufacture methamphetamine." Whalen, 131 Wash.App. at 65, 126 P.3d 55.
¶ 11 The Supreme Court found both Moles and Whalen persuasive in State v. Brockob, 159 Wash.2d 311, 331, 150 P.3d 59 (2006) (three consolidated appeals). Appellant Brockob shoplifted a large quantity of Sudafed and left some of the packaging in the store. The court concluded the facts were more like Whalen than Moles and determined the evidence was insufficient to convict. Brockob, 159 Wash.2d at 338, 150 P.3d 59. "He did not have any coffee filters or other equipment used in the manufacturing process. In short, nothing pointed to Brockob's intent to manufacture rather than merely possess Sudafed." Brockob, 159 Wash.2d at 338-39, 150 P.3d 59. On the other hand, the court concluded the evidence against one of the other appellants, Gonzalez, was sufficient to convict him of attempted manufacture. Gonzalez had been caught in a vehicle with three sealed bottles of ephedrine tablets and unused coffee filters in two different sizes. Another person who was in the car had another bottle of ephedrine tablets. The court held the evidence sufficient because "at least two of the three factors cited in Moles were present. Coffee filters were found on the backseat of the vehicle, and the amount of ephedrine in the vehicle seems excessive but for the likely connection to methamphetamine manufacturing." Brockob, 159 Wash.2d at 340, 150 P.3d 59.
¶ 12 Under Whalen, Missieur's possession of as many as 78 stolen boxes of pseudoephedrine would arguably not, by itself, be enough to sustain the charge of possession with intent to manufacture. The issue here, then, is whether Missieur's simultaneous possession of the lithium batteries adequately distinguishes his case from Whalen and brings it within the ambit of the Moles test requiring "at least one additional factor, suggestive of intent". Moles, 130 Wash.App. at 466, 123 P.3d 132.
¶ 13 Missieur begins with the premise that the statutory element of "intent to manufacture" means intent to become personally involved in combining the ingredients, as opposed to merely having the intent to supply the ingredients to someone else who would combine them. We will assume this premise is correct, as other jurisdictions have interpreted *385 similar statutory language in that way. See, e.g., United States v. Weston, 4 F.3d 672, 673, 675 (8th. Cir.1993) (defendant's mere possession of methylamine was suspicious but did not prove he possessed it with intent to manufacture methamphetamine; jury would have to speculate to conclude he "planned to become directly or indirectly in manufacture, rather than supplying someone else who would likely manufacture"), State v. Truesdell, 679 N.W.2d 611, 618 (Iowa 2004) (statute requiring "intent to use the product to manufacture" not satisfied by evidence that possessor knew or believed that the product would "be used" to manufacture).
¶ 14 Relying on Weston and Truesdell, Missieur argues that the most a jury could infer from his possession of pseudoephedrine and lithium is that he was gathering ingredients of methamphetamine with the intent to supply them to some other person yet unknown. He contends that possession of another precursor ingredient along with pseudoephedrine does not support the inference of intent to manufacture any more than possession of pseudoephedrine by itself.
¶ 15 We disagree. Missieur's argument is for trial, not for a Knapstad motion. His possession of the lithium batteries along with the pseudoephedrine cold medicine satisfies the Moles test of "pseudoephedrine possession plus". While the possession of lithium batteries is not in itself illegal, it is the combination of lithium with the pseudoephedrine, a controlled substance, that makes the inference of intent to manufacture methamphetamine follow logically as a matter of probability. Missieur's argument implies that no matter how many ingredients or pieces of equipment a defendant collects in addition to pseudoephedrine, intent to manufacture cannot be found unless there is also concrete proof of an existing or intended manufacturing operation. Concrete proof would undoubtedly be helpful to the State at trial, but it is not legally necessary. The State is entitled to rely on reasonable inferences. When a suspect has gone so far as to possess not only pseudoephedrine but also at least one other distinctive ingredient or manufacturing accessory, it is reasonable to infer that he is planning to personally manufacture methamphetamine even though it is also possible that he is hoping only to become a supplier of ingredients.
¶ 16 To characterize the evidence as insufficient, Missieur relies on Weston and Truesdell. But these two cases are entirely consistent with the Moles test of "pseudoephedrine possession plus". Weston (like Whalen) is a one-precursor case. And so is Truesdell. The defendant in Truesdell was convicted of possessing pseudoephedrine with intent to manufacture based on evidence that he shoplifted a sizable quantity of cold medicine. At trial he testified that he planned to sell the cold medicine to a friend. The court held the mere possession of the cold medicine was insufficient to prove the intent to manufacture:
Truesdell's possession of a large quantity of the cold relief products supports an inference that some person would use the product to manufacture meth, but there was no additional evidence to show he intended to use the product to manufacture meth. Without additional evidence of intent, the jury would have had to guess to reach the conclusion that Truesdell intended to manufacture meth. It was just as likely under the evidence that Truesdell intended for the product to end up in the hands of another person who would manufacture the meth.
Truesdell, 679 N.W.2d at 619.
¶ 17 Significantly, Truesdell was preceded by the same court's decision to affirm a conviction in a two-precursor case. State v. Heuser, 661 N.W.2d 157, 166 (Iowa 2003). Police were alerted that Heuser was going from store to store to acquire pseudoephedrine cold medicine. Upon stopping his van, they found him in possession of 12 AA lithium batteries along with large quantities of cold tablets, some of them in loose blister packs. His conviction for possession with intent to manufacture was affirmed on appeal against a sufficiency challenge because it was reasonable to infer that the defendant intended to use the pseudoephedrine and the batteries to manufacture methamphetamine. Heuser, 661 N.W.2d at 165-66.
*386 ¶ 18 The court explained that in Heuser, possession of a large quantity of cold tablets was not the only factor indicative of intent to manufacture:
We found substantial evidence to support a conviction of possession of a precursor with intent to manufacture meth in violation of Iowa Code section 124.401(4) based upon the possession of a large quantity of cold relief tablets containing pseudoephedrine in State v. Heuser. 661 N.W.2d at 166. However, there was also evidence in the case that the defendant possessed lithium batteries, another common product used in meth manufacturing. Id. Additionally, there was evidence that the defendant purchased the cold relief products in a surreptitious manner. See id. Some of the boxes of medicine in his possession had also been opened. See id. at 160. Although there was no direct evidence of manufacturing, we found all the circumstances in the case constituted substantial evidence to support the element of intent to manufacture. Id. at 166.
Truesdell, 679 N.W.2d at 619.
¶ 19 Truesdell and Heuser, when read together, draw the line between mere possession and possession with intent to manufacture in the same way that Whalen and Moles do. To survive a Knapstad motion, the State must show more than mere possession of pseudoephedrine. But the State need not necessarily prove that the defendant has already begun to combine ingredients, that he knows the recipe, that he has a lab, that he has customers, that he has promised to manufacture, or that he is linked to a known manufacturer. An additional factor such as possession of lithium batteries is enough for a prima facie case of intent to manufacture. The motion to dismiss should have been denied.
¶ 20 In resolving the State's challenge to the Knapstad ruling, we have not addressed a corpus delicti issue that both parties have briefed. The corpus delicti issue is whether Missieur's statements to the police can be considered in evaluating the sufficiency of the evidence to prove intent to manufacture. Because we conclude the evidence was sufficient without those statements, it is unnecessary to decide the corpus delicti issue.
¶ 21 Reversed and remanded for trial.
WE CONCUR: BECKER and GROSSE, JJ.
NOTES
[1] Report of Proceedings at 6.
[2] Report of Proceedings at 6.
[3] The trial court had dismissed the charges against Ashworth in a previous hearing. We reversed the dismissal in an unpublished decision. State v. Ashworth, 138 Wash.App. 1005, 2007 WL 1113974, 2007 Wash.App. LEXIS 684 (April 16, 2007).