*This opinion is subject to revision before final publication in the Pacific Reporter.*

**2014 UT 22**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

JOHN DORSEY,
*Respondent,*

*v.*

DEPARTMENT OF WORKFORCE SERVICES and
WORKFORCE APPEALS BOARD,
*Petitioners.*

No. 20130073
Filed June 20, 2014

On Certiorari to the Utah Court of Appeals

Attorneys:

David E. Ross III, Park City, for respondent

Amanda B. McPeck, Salt Lake City, for petitioners

JUSTICE LEE authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE NEHRING,
JUSTICE DURHAM, and JUSTICE PARRISH joined.

JUSTICE LEE, opinion of the court:

¶1 The Department of Workforce Services has adopted a rule deeming unemployment claimants ineligible for benefits if they travel outside the United States for more than two weeks. UTAH ADMIN. CODE r. 994-403-112c(2)(a)(i)(B) (2011). In the administrative proceedings below, the principal dispute concerned the question whether this rule could properly extend to a seasonal worker who was not required to seek work as a prerequisite to qualifying for benefits. That question was resolved against claimant John Dorsey in the administrative proceedings below, but in his favor in the court of appeals. We affirm the court of appeals, concluding that the rule as extended to a claimant not required to search for work is incompatible with the controlling language of the statute.

¶2 The legislature has recently amended the governing statute in a manner endorsing the Department's position. UTAH CODE

§ 35A-4-403(3) (2013). But the amendment was not retroactive and does not apply to this case. We accordingly consider the parties' arguments under the law as it stood before this amendment. *See id.* § 35A-4-403 (2011).[1] And we hold, affirming the court of appeals, that the rule adopted by the Department and extended to a seasonal worker not required to search for work is incompatible with the governing statutory provision. Thus, we conclude that Dorsey's statutory eligibility for benefits turned only on whether he was "able" and "available" for work, UTAH CODE § 35A-4-403(1)(c), and find him eligible for unemployment benefits under the statute as we interpret it in light of the unchallenged administrative determination of his ability and availability for work.

I

¶3    This case arises out of a series of unemployment claims filed by John Dorsey for periods of time when he was in Baja California, Mexico, during the offseason of his job as a server at a Utah resort. During the winter and summer months, Dorsey worked full time as a server at a seasonal restaurant in Park City. Each time that restaurant closed during the offseason, Dorsey opened a claim for unemployment benefits with the Department of Workforce Services. Because he was considered a seasonal employee, Dorsey was granted a deferral from the requirement of searching for work as a prerequisite to eligibility for benefits. UTAH ADMIN. CODE r. 994-403-108b(1)(c) (authorizing the Department to defer work search requirements for claimants who have "an attachment to a prior employer and a date of recall to full-time employment within ten weeks"). Thus, the Department instructed Dorsey that he was "not required to look for work," but must be "available for full[-]time work."

¶4    Dorsey traveled to Mexico on four separate occasions to camp and surf during periods in which he was receiving unemployment benefits. Each of these trips lasted longer than a month. While in Mexico, Dorsey's employer was able to reach him via cell phone or email. Dorsey contacted his employer on a few occasions to make sure that he was not needed earlier than his understood return-to-work date. It is undisputed that Dorsey was willing and able to cut his trip short and fly or drive back to Utah if necessary, and that he would have been able to make it back to Utah within twenty-four hours.

---

[1] Unless otherwise noted, all citations to the Utah Code and the Utah Administrative Code refer to the 2011 versions.

¶5 To receive benefits, Dorsey was required to call the Department's Claim Center once a week to file a claim. Each week he answered "yes" to the question, "during the week, were you able and available for full-time work?"

¶6 In a phone call Dorsey had with the Claim Center on May 10, 2011, Dorsey mentioned that he was in Mexico. That call prompted the Department to investigate. The Department concluded that Dorsey had been ineligible to receive unemployment benefits during all four of his trips to Mexico. Dorsey appealed the decision to an Administrative Law Judge. In the proceedings before the ALJ, the parties conceded Dorsey's practical availability for work but litigated the legality and applicability of the Department's rule foreclosing benefits for those traveling outside the United States for over two weeks.

¶7 The ALJ affirmed the Department. Under the ALJ's ruling, Dorsey was held liable for more than $15,000 in overpaid unemployment benefits and statutory penalties. Dorsey appealed to the Workforce Appeals Board, which also affirmed. Dorsey then appealed that decision to the court of appeals.

¶8 In the court of appeals, the Department justified its denial of unemployment benefits based primarily on an interpretation of its own regulations. The applicable administrative rule is the 2011 version of Utah Administrative Code rule 994-403-113(c)(i)(B). That rule states that "[a] claimant who is out of the United States for more than two weeks is not eligible for benefits for any of those weeks." *Id.* The Department interpreted this provision as a per se bar on extended international travel, automatically categorizing any claimant staying abroad for more than two weeks as ineligible for benefits. No exceptions.

¶9 Dorsey offered a contrary construction of the rule. He read it as applying only to claimants required to seek work, and not to those (like Dorsey) exempted from such a requirement because, for example, they are classified as seasonal workers.[2] UTAH

---

[2] In general, those claiming unemployment benefits must show that they are making "a good faith effort to secure employment." UTAH CODE § 35A-4-403(1)(b). A claimant may be placed on "deferred status" and be exempt from looking for work, however, if the claimant "has an attachment to a prior employer and a date of recall to full-time employment within ten weeks of filing or reo-

ADMIN. CODE r. 994-403-108b. In support of that view, Dorsey emphasized the context of the two-week rule. First, he noted that a claimant is not considered "available for work" if the "claimant is away from his or her residence," unless the claimant "has made arrangements to be contacted and can return quickly enough to respond to any opportunity for work." *Id.* r. 994-403-112c(2)(a). And in addition, Dorsey suggested that the next subsection, titled "Travel Which is Necessary to Seek Work," indicates that claimants who cannot return quickly may still be eligible if the trip was for the purpose of seeking work, provided that the trip does not exceed two weeks. *Id.* r. 994-403-112c(2)(a)(i). Thus, according to Dorsey, because the two-week bar appears in the context of provisions for claimants who are required to seek work *and* are unable to show that they "can return quickly," the two-week cutoff should not apply to a claimant not required to search for work.

¶10 The court of appeals reversed. It acknowledged that both readings "of the rule [were] plausible when read in isolation," but held that the Department's interpretation was inconsistent "with the statute the rule implements." *Dorsey v. Dep't of Workforce Servs.*, 2012 UT App 364 ¶ 18, 294 P.3d 580. In the court of appeals' view, the Department's interpretation of the rule "creates a non-statutory category of ineligible claimants, essentially all those traveling outside the United States and Canada for more than two weeks." *Id.* ¶ 21. And the court of appeals concluded that an "irrebuttable presumption" that such claimants are always unavailable was incompatible with the text of the statute. *Id.*

¶11 We granted certiorari and now affirm.

## II

¶12 The case before us implicates questions of both regulatory and statutory interpretation—of whether the Department's rule barring unemployment benefits for those traveling extensively outside the United States applies to a claimant not required to

---

pening a claim." UTAH ADMIN. CODE r. 994-403-108b(1)(c). This policy allows employers with seasonal or cyclical labor needs to maintain the availability of their trained labor force while closed for short periods. The employer is liable for the cost of those benefits, however, so the deferral program does not disproportionately burden taxpayers or employers that maintain a continuous workforce. *See id.* r. 994-306-101.

search for work, and of whether the rule so construed is compatible with the statute. Of those issues, the threshold question is statutory. If in adopting the rule in question the Department "has erroneously interpreted or applied the law," UTAH CODE § 63G-4-403(4)(d), then our review of Dorsey's claim would be under the statute and not under the Department's rule.

¶13 We dispose of the case on that basis. We hold that the Department's ban on international travel is incompatible with the text of the statute insofar as it may be deemed to extend to an individual who is not required to search for work as a precondition to unemployment benefits. And in so doing, we reject the grounds put forward by the Department in support of its travel ban, and uphold Dorsey's eligibility for unemployment benefits in the absence of any dispute regarding his factual availability for work.

A

¶14 The Department has the statutory authority to "adopt rules when authorized" and to "establish eligibility standards," UTAH CODE § 35A-1-104, as long as those standards are "consistent with its governing statute[]." *Sanders Brine Shrimp v. Audit Div. of Utah State Tax Comm'n*, 846 P.2d 1304, 1306 (Utah 1993). But of course administrative "[r]ules are subordinate to statutes and cannot confer greater rights or disabilities" than those set forth in legislation. *Rocky Mountain Energy v. Utah State Tax Comm'n*, 852 P.2d 284, 287 (Utah 1993). So we must begin with an examination of the governing statute.

¶15 The operative statutory section provides that "an unemployed individual is eligible to receive benefits for any week if the division finds" that the claimant has fulfilled four core requirements. UTAH CODE § 35A-4-403(1). Only one of those requirements is at issue here—that "the individual is able to work and is available for work during each and every week for which the individual made a claim for benefits." *Id.* § 35A-4-403(1)(c). The Department seeks to sustain its ban on international travel as an implementation of this rule. So the threshold statutory question is whether the Department's per se ban is compatible with this provision.[3]

---

[3] This case presents only the question whether a per se ban is compatible with the eligibility requirements that apply to a deferred claimant like Dorsey who has no duty to search for work.

¶16 We conclude that it is not. Our analysis, of course, starts with the statutory text. Here that text is straightforward and therefore dispositive. In providing that eligibility depends on whether a person is "available for work," the statute states a criterion that turns on a person being *capable* of or *obtainable* or *accessible* for working. *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 150 (2002) (defining *available* in these terms); *see also* THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 123 (5th ed. 2011) (defining *available* as "[p]resent and ready for use; at hand; accessible," and "[c]apable of being gotten; obtainable"). This straightforward understanding of *availability* for work is incompatible with a per se ban on international travel beyond two weeks. In this age of the internet and air travel, a person could easily be beyond the borders of the United States and yet still capable of and accessible for work in Utah.

¶17 As the court of appeals noted, "a claimant in San Diego and a claimant in Tijuana" may be "equally able to return quickly enough to respond to any opportunity for work." *Dorsey v. Dep't of Workforce Servs.*, 2012 UT App 364, ¶ 21, 294 P.3d 580 (citing UTAH ADMIN. CODE r. 994-4-3-112c(2)(a)). "And a claimant in Cancun may be *much* more readily available, as a practical matter, than one in the High Uintas Wilderness area." *Id.* With this in mind, we hold that statutory *availability* for work is not compatible with a per se ban on international travel beyond two weeks, as a person outside the United States could certainly be capable of or obtainable and accessible for work under the terms of the statute.

¶18 In so holding, we give no credit to the parallel travel bans in the unemployment laws of other states, cited by the Department in support of its rule. Such bans could perhaps carry some persuasive punch if they evidenced an established, term-of-art understanding of "available for work" in unemployment law. *See State v. Canton*, 2013 UT 44, ¶ 28, 308 P.3d 517 (noting that "[t]he legislature is entitled to invoke specialized legal terms," and that "when it does so we credit the legal term of art, not the common understanding of the words" in the statute). But the evidence presented is not along those lines. It simply indicates that other states have done what our legislature has now done (in a manner not

---

Thus, we need not and do not decide whether the ban would be acceptable as applied to a claimant who *is* required to seek work.

retroactively applicable here, *see* UTAH CODE § 35A-4-403(3) (2013))—which is to embrace a freestanding policy, unconnected to any understanding of the criterion of *availability for work*, of foreclosing benefits for those traveling abroad for extended periods.[4] That is unhelpful here. It is the statutory text that controls, and policy developments in other states are irrelevant to our analysis of that text, even if they might be helpful to the legislature in deciding whether to amend the statute.

¶19 Indeed, the evidence that is available indicates that the term-of-art understanding of "available for work" is in line with the ordinary meaning set forth above. At the time our statute was first enacted and continuing to the modern day, the term "available for work" was widely understood to mean simply that a claimant was "willing, able, and ready to accept suitable work which he does not have good cause to refuse." Louise F. Freeman, *Able to Work and Available for Work*, 55 YALE L. J. 123, 124 (1945); *see also* Gordon Griffin, Jr., *"Available for Work" Criterion for Payment of Unemployment Compensation*, 30 TEX. L. REV. 735, 736 (1952); BLACK'S LAW DICTIONARY 155 (9th ed. 2009) (defining "available for work" as "ready, willing, and able to accept temporary or permanent employment when offered").

¶20 We therefore reject the Department's international travel ban insofar as it may be deemed to apply to those not required to

---

[4] *See, e.g.*, *Frequently Asked Questions*, ALASKA DEP'T OF LABOR AND WORKFORCE DEV. (April 12, 2011), http://labor.alaska.gov/esd_unemployment_insurance/faq.htm (travel not allowed unless for a specific reason, such as searching for work or attending the funeral of an immediate family member); *After You've Applied for Unemployment: Frequently Asked Questions* N. Y. DEP'T OF LABOR (last visited June 16, 2014), https://www.labor.ny.gov/ui/claimantinfo/onceyouhaveapplie dfaq.shtm ("If we learn that you received benefits while outside of the United States, we will issue an overpayment determination."); *Nevada Unemployment Insurance Facts for Claimants*, NEV. DEP'T OF EMP'T, *available at* http://www.detr.state.nv.us/ESD%20Pages/ESD_docs/UI_Clai mants_Handbook.pdf ("You are allowed to file weekly claims for benefits from outside your normal labor market area for a period of two weeks.").

search for work as a precondition for benefits. That conclusion forecloses the need to consider the question whether the Department's rule is properly construed to extend to Dorsey's circumstances, and limits the analysis in this case to the statutory question whether Dorsey was "able to work" and "available for work during each and every week for which" he "made a claim for benefits." UTAH CODE § 35A-4-403(1)(c).

B

¶21 We also reject two alternative grounds advanced by the Department in support of its rule. First, we decline the Department's invitation to sustain its rule as a means of advancing the purpose of the governing statute—as outlined in its preamble—of "maintaining purchasing power [of unemployed workers] and limiting the serious social consequences of unemployment." UTAH CODE § 35A-4-102. The Department's argument misconceives the role of a statement of statutory purpose. Where the statutory text is clear, a court is not at liberty to expand its terms in a manner presumed to better advance the stated purpose of the law. It is the operative text of the statute that controls. A statement of purpose—even one built into the enacted terms of the statute—may not contravene the operative terms of the law. *See* 2A SUTHERLAND, STATUTES AND STATUTORY CONSTRUCTION § 47.4 (Norman Singer, ed., 7th ed. 2014) ("Courts have long settled the principle that [t]he preamble cannot control the enacting part of the statute, in cases where the enacting party is expressed in clear, unambiguous terms. . . ." (internal quotation marks omitted)).

¶22 A preambular purpose statement might inform our resolution of ambiguities in statutory text. But it cannot override the clear terms of the law. Thus, because we find the operative meaning of "availability for work" to be clear, we cannot override it on the basis of an identifiable method of advancing its stated goals more effectively. That is for the legislature to decide.

¶23 Second, we find no basis for the Department's international travel rule in the legislature's subsequent amendment of the statute. *See* UTAH CODE § 35A-4-403(3) (2013). Granted, the amended version of the statute—applicable prospectively but not to this case—provides that "[a]n individual located in a foreign country for three or more days of a week and who is otherwise eligible for benefits is only eligible . . . if: (a) the individual is legally author-

ized to work in the foreign country; and (b) the state and the foreign country have entered into a reciprocal agreement concerning the payment of unemployment benefits." *Id*. But "we apply the law as it exists at the time of the event regulated by the law in question." *State v. Clark*, 2011 UT 23, ¶ 13, 251 P.3d 829. And a subsequent amendment is rarely helpful in discerning the meaning or intent of the law that the legislature adapted. That is because an amendment often leaves room for either of two alternative inferences: Either the legislature sought to confirm its longstanding understanding or intent, or it thought better of a matter once resolved and sought later to revise it.[5] Courts are rarely in a position to credit one inference over another. And we are certainly in no such position here. So we resort to our interpretation of the version of the statute in place at the time of the parties' dispute—unencumbered by any vagaries regarding an inference to be drawn from the recent amendment.

C

¶24 Under the ordinary and legal meaning of "available for work," availability depends largely on the facts and circumstances of each case. *In re Beatty*, 210 S.E.2d 193, 195 (N.C. 1974) ("[W]hether a person is available for work differs according to the facts of each individual case."). And those facts and circumstances do not encompass a per se ban on international travel. Instead the standard depends on case-specific facts regarding a claimant's capability, obtainability, or accessibility within a reasonable period of time.

---

[5] *See South Dakota v. Yankton Sioux Tribe*, 522 U.S. 329, 355 (1998) ("We have often observed . . . that the views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one." (internal quotation marks omitted)); *State v. Truesdell*, 679 N.W.2d 611, 617 (Iowa 2004) ("A change in a statute can indicate either intent by the legislature to change the law or intent to clarify the original statute."). *Cf.* Max Radin, *Statutory Interpretation*, 43 HARV. L. REV. 863, 873 (1930) (noting, in the circumstance of successive versions of a bill culminating in an enacted statute, that the legislature's rejection of earlier iterations of the bill in favor of the final form "gives us little information" about its intent, as we can "never really know why one gave way to any other").

¶25 That said, in this case there was no dispute regarding Dorsey's capability of or accessibility for work in this case. Before the ALJ, the Department expressly stated that it was "not contesting whether or not [Dorsey] was able or available" for work, while emphasizing that the only question presented was "whether he was allowed to collect unemployment while out of the country." Thus, the only issue in this case is the legal viability of the Department's rule foreclosing benefits for claimants traveling outside the United States for over two weeks.

¶26 Having deemed that rule incompatible with the statute, we affirm the court of appeals' decision and uphold Dorsey's entitlement to unemployment benefits.

———————

10