**IN THE COURT OF APPEALS OF IOWA**

No. 13-1028
Filed July 16, 2014

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**DEANDRE GOODE,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Des Moines County, Cynthia H. Danielson, Judge.

        DeAndre Goode appeals from the judgment and sentence imposed upon his conviction of second-degree robbery. **AFFIRMED AND REMANDED.**

        Mark C. Smith, State Appellate Defender, and Melinda J. Nye, Assistant Appellate Defender, for appellant.

        Thomas J. Miller, Attorney General, Bridget A. Chambers, Assistant Attorney General, Patrick C. Jackson, County Attorney, and Lisa Schaeffer and Tyron T. Rogers, Assistant County Attorneys, for appellee.

        Considered by Danilson, C.J., and Potterfield and McDonald, JJ.

**POTTERFIELD, J.**

DeAndre Goode appeals from the judgment and sentence imposed upon his conviction of second-degree robbery, contending there is insufficient evidence of specific intent to support the conviction. He also contends his trial counsel was ineffective in failing to object to the jury instructions and in failing to move to exclude prior-conviction impeachment evidence. Finally, he argues the district court's written judgment—which ordered his sentence for second-degree robbery be served consecutive to an unrelated sentence Goode was serving— varies from the court's oral announcement at the sentencing hearing that the sentences would be served concurrently. We affirm the conviction, preserve some of the ineffective-assistance-of-counsel claims, and remand for the entry of a nunc pro tunc order to correct the judgment entry.

**I. Background Facts and Proceedings.**

Viewing the evidence presented at trial in the light most favorable to the State, the record supports the following.

About twenty minutes before midnight on Saturday, November 24, 2012, George Petree returned home from the grocery store. He drove by three men walking in the opposite direction Petree was traveling. Petree looked in his rearview mirror and noted the three men now walking in the same direction as he was traveling. Petree parked on the street in front of his residence. As he was carrying groceries to his house, out of the corner of his eye, Petree saw an individual approaching him "really quick." He turned, and a man Petree later identified as DeAndre Goode hit him in the face. Petree was able to clearly see

the assailant's face. The punch knocked Petree into the railing of his porch and then to ground.

As he was falling to the ground, Petree saw two other men approaching. Goode and the other two men repeatedly kicked and punched Petree in his back, side, and head as he lay curled up in a ball on the ground. Petree repeatedly yelled for help. One of the attackers said, "I have a gun. I want to shoot him." Petree responded by saying, "I have a daughter, please just take my money." The same man said "oh, you have money, huh." Petree told him that his money was in his wallet. One of the attackers took Petree's wallet from his back pocket. The beating continued. The men also took Petree's cell phone and his coat. The three attackers ran off across the street together.

Petree's neighbor, Lance Core, heard "a bunch of screaming" around midnight. He looked out his window and saw three men kicking and punching someone as he lay on the ground. (Core later learned the person on the ground was Petree.) Core called the police. He estimated the assault lasted five to ten minutes.

Petree's wallet contained $208 in cash. His wallet also contained his driver's license, debit card, social security card, a card from his bank that contained his bank account number and the bank's routing number, some gift cards, his mother's food stamp card, and some probation cards. On the night of the robbery, the police did find the food stamp card, the gift cards, and probation cards. But Petree never got back his wallet, cash, driver's license, debit card, the card with his bank account information, or his social security card.

The Monday following the robbery, Petree called his bank and reported that he had been robbed and needed to cancel his debit card. The bank issued Petree a new card but purposely did not cancel his old card, hoping to see if someone would use it. In December, someone did use Petree's stolen debit card, overdrawing his bank account. Petree called the police.

During the subsequent investigation, the police learned that on December 10, 2012, someone began the online process of applying for a credit card to be issued by US Bank in the name of George Petree. After an applicant accepts the offer of credit, US Bank captures the IP address from which the acceptance is made. The IP address for the card issued in the name of George Petree was captured on December 13, 2012. The credit card application had been made from an IP address registered to a Marietta Street apartment in Burlington— DeAndre Goode had moved into that apartment in October.[1] The internet account used to order the credit card was a Mediacom account created December 3, 2012, at Goode's address but registered in the name of Eric Moore. No one by the name of Eric Moore lived at the apartment, and Goode testified he did not know anyone with that name.

---

[1] The Marietta Street apartment was seven or eight blocks from George Petree's home. There was conflicting evidence whether Goode lived alone at the Marietta Street apartment. The mother of Goode's child, Brooke Johnson, said the apartment was Marcus Hamb's and that Goode moved in with Hamb when her relationship with Goode deteriorated. Goode and his brother D'Juan Goode both testified the apartment was Hamb's and Hamb allowed Goode to move in. Shenterra Cratton testified Goode lived there alone. The State offered rebuttal evidence that Goode informed his parole officer that at first he was living with his brother Darren Goode at the Marietta Street apartment but later listed no others living there with him. Jaime Baker testified Hamb was on pretrial supervision in November and December 2012 and listed his address as being in Rome, Iowa.

The new credit card was mailed to the address listed on the card application, a North Third Street apartment in Burlington, where Megan Smith lived. Smith was a friend of Goode. Someone called US Bank's toll-free telephone number on December 19, 2012, and activated the credit card. (A person has to physically have the card in his or her possession to activate it.) After activating the card, someone also called US Bank and requested a personal identification number (PIN). A PIN makes it possible to get cash advances off the card. In order to get a PIN, a person must speak to a live representative of the bank, and the call is recorded. Police obtained the recording of that telephone call. The voice on the recording was identified as Marcus Hamb.

Purchases were made using the US Bank-issued credit card in Petree's name on a number of occasions between December 19 and December 28, 2012, including a December 19 online purchase from Xbox Live. On December 20, 2012, the card was used at a Wal-Mart. Video surveillance from the store was obtained. Three people—Goode, Hamb, and Smith—were all present when the card was used on December 20. The car driven by the three on that date belonged to Hamb's mother.

The police questioned Smith, who stated she was at Wal-Mart with Goode and Hamb. When Goode was interviewed, he admitted he was present on December 19 when Hamb purchased the Xbox and on December 20 at the Wal-Mart with Smith and Hamb. Goode denied any knowledge of a robbery or that Hamb had used anything other than a gift card for those purchases.

Goode was charged with second-degree robbery. He filed a notice of an alibi defense. At trial, Shenterra Cratton testified she was at Goode's Marietta Street apartment with Goode and his daughter all night on November 24, leaving the morning of November 25. Goode testified his cousin, Alex Goode, drove him to Brooke Johnson's home on November 24, where they spent a few hours with Goode's daughter while Johnson got ready for work, and then Alex drove Goode and his daughter back to the Marietta Street apartment. Alex left, and Goode and his daughter stayed home that evening watching movies with Cratton.

Goode was convicted of second-degree robbery and now appeals. He contends there is insufficient evidence of specific intent to sustain the conviction, trial counsel was ineffective in failing to object to the jury instructions and to prior-conviction impeachment evidence, and the written sentencing order does not comport with the district court's oral announcement at the sentencing hearing.

**II. Scope and Standards of Review.**

The Court reviews a ruling on the sufficiency of the evidence for correction of errors of law. *State v. Showens*, 845 N.W.2d 436, 439 (Iowa 2014). We view the evidence in the light most favorable to the State and uphold the finding of guilt if the verdict is supported by substantial evidence. *Id.* at 439–40.

We review claims of ineffective assistance of counsel de novo. *Id.*; *Ledezma v. State*, 626 N.W.2d 134, 142 (Iowa 2001).

"When a party asserts that an inconsistency exists between an oral sentence and a written judgment entry, we review the matter for correction of errors at law." *State v. Hess*, 533 N.W.2d 525, 527 (Iowa 1995).

**III. Discussion.**

*A. Suffiiciency of evidence of specific intent.* Goode contends the evidence does not establish that he acted with the necessary specific intent to commit a theft or that he knew that someone he aided and abetted had that specific intent. The State argues this claim was not adequately preserved. We agree.

At trial, Goode's trial counsel moved for a directed verdict "based upon the State's ability to present a prima facie case that could support a conviction in this case." The motion for judgment of acquittal was "based on failure of the State to provide a case that could support a conviction." In *State v. Truesdell*, 679 N.W.2d 611, 615 (Iowa 2004), our supreme court observed, "To preserve error on a claim of insufficient evidence for appellate review in a criminal case, the defendant must make a motion for judgment of acquittal at trial that identifies the specific grounds raised on appeal." As was the case in *Truesdell*, Goode's trial counsel did not specifically raise the sufficiency claim made on appeal and thus the issue is not preserved. *See* 679 N.W.2d at 615.

*B. Ineffective assistance of counsel.* Goode makes an alternative claim that trial counsel was ineffective in failing to preserve his challenge to the sufficiency of the evidence of specific intent.

> The failure of trial counsel to preserve error at trial can support an ineffective assistance of counsel claim. Ordinarily, ineffective assistance of counsel claims are best resolved by postconviction proceedings to enable a complete record to be developed and afford trial counsel an opportunity to respond to the claim. Yet, in some instances, the appellate record can be adequate to address the claim on direct appeal. When the record is adequate, the appellate court should decide the claim on direct appeal.

*Id.* at 615–16.

In order to succeed on his ineffective-assistance-of-counsel claim, a defendant must establish by a preponderance of the evidence that (1) trial counsel failed to perform an essential duty and (2) prejudiced resulted. *State v. Fountain*, 786 N.W.2d 260, 265–66 (Iowa 2010). A claim of ineffective assistance of counsel fails if the defendant is unable to prove either prong of the test. *Id.* at 266.

"To establish the first prong, the [defendant] must demonstrate the attorney performed below the standard demanded of a reasonably competent attorney." *Ledezma*, 626 N.W.2d at 142.

> Considering the standard of reasonableness utilized in determining ineffective assistance claims, ineffective assistance is more likely to be established when the alleged actions or inactions of counsel are attributed to a lack of diligence as opposed to the exercise of judgment. Clearly, there is a greater tendency for courts to find ineffective assistance when there has been "an abdication—not an exercise—of . . . professional [responsibility]." Miscalculated trial strategies and mere mistakes in judgment normally do not rise to the level of ineffective assistance of counsel. Thus, claims of ineffective assistance involving tactical or strategic decisions of counsel must be examined in light of all the circumstances to ascertain whether the actions were a product of tactics or inattention to the responsibilities of an attorney guaranteed a defendant under the Sixth Amendment.

*Id.* at 142–43. "'We will not find counsel incompetent for failing to pursue a meritless issue.'" *State v. Brothern*, 832 N.W.2d 187, 192 (Iowa 2013) (citation omitted).

"To establish prejudice, the defendant must demonstrate the 'reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different.'" *State v. Lane*, 743 N.W.2d 178, 183 (Iowa 2007) (quoting *Strickland v. Washington*, 466 U.S. 668, 694 (1984)).

    *1. Failure to object to sufficiency of evidence.* We conclude Goode has failed to prove counsel was ineffective in not preserving the sufficiency claim. The jury was instructed that to prove Goode guilty of robbery in the second degree, the State had to prove

> 1. On or about November 25, 2012, the defendant had the intent to commit a theft or aided and abetted another he knew had an intent to commit a theft.
> 2. In carrying out the intended theft or to assist him in escaping from the scene, with or without the stolen property, the defendant (a) committed an assault or aided and abetted in an assault on George Petree.

The offense of theft is defined in section 714.1(1), which states that a person commits theft when he "[t]akes possession or control of the property of another, or property in the possession of another, with the intent to deprive the other thereof." *See State v. Schminkey*, 597 N.W.2d 785, 788–89 (Iowa 1999). Goode contends there is insufficient evidence Petree's assailants had the specific intent to comment a theft when the assault began.

    We note that because proof that a person acted with the specific purpose of depriving the owner of his property requires a determination of what the person was thinking when an act was done, it is seldom capable of being established with direct evidence. *Id.* at 789. Consequently, the facts and circumstances surrounding the act, as well as any reasonable inferences to be drawn from those facts and circumstances, may be relied upon to ascertain the person's intent. *Id.*

Here, Petree identified Goode as the person who ran up to him, punched him in the face, and started the attack. He saw two others join in the assault. After one of the assailants stated, "I want to shoot him," Petree told them just to take his money. That assailant then said, "oh you have money, huh?" Even if we assume the assailants had no intent to commit a theft until this point, the continued assault and the taking of Petree's wallet after this statement supports an inference that the assailants then intended to commit a theft. *See State v. Oetken*, 613 N.W.2d 679, 686 (Iowa 2000) ("An intent to commit theft may be inferred from an actual breaking and entering of a building which contains things of value."). The assault continued while Petree's wallet was removed from Petree's pocket. From these facts and circumstances, a reasonable fact finder could determine the defendant had, or aided and abetted another who had, the specific intent to commit a theft and in carrying out the theft committed an assault. Goode thus cannot prove counsel breached a duty in failing to challenge the sufficiency of the evidence of intent to commit a theft.

Goode also asserts trial counsel was ineffective in not objecting to the proposed jury instructions, which did not include an instruction on specific intent, and in failing to move in limine to exclude evidence of Goode's prior bad acts or object to the State's question about Goode having been previously convicted of willful injury.

     *2. Failure to object to jury instructions.* In *Fountain*, the defendant was convicted of the offense of domestic abuse assault causing bodily injury. 786 N.W.2d at 262. On appeal, the defendant argued trial counsel was ineffective in failing to request a specific intent instruction, which is an element of

assault. *Id.* The supreme court concluded the trial court should have instructed the jury on specific intent, *id.* at 265, and trial counsel "should have been aware of the case law declaring that assault includes an element of specific intent." *Id.* at 266. The court wrote, "After reviewing the facts of this case and the evidence presented, we conclude only trial strategy could explain counsel's failure to request a specific intent instruction." *Id.* at 266–67. The court observed, though, that "[i]f the defense strategy is to deny that any assaultive contact occurred, the individual elements of assault become unimportant." *Id.* at 267.

Here, trial counsel may have determined the individual elements of robbery were "unimportant" because Goode was not challenging the elements of the offense. *See id.* Rather, his defense was that he was not involved and Petree had incorrectly identified him as one of the assailants. We preserve this issue for possible postconviction relief proceedings.

   *3. Failure to move to exclude or object to questioning about prior conviction.* Goode acknowledged throughout his defense that he had been recently released from prison when this offense occurred. Goode testified he was home with Cratton and his daughter on the night Petree was attacked. To support his defense, Goode offered evidence that he was on parole and was subject to a 10:30 curfew.

During the State's cross-examination of Goode, the following colloquy took place:

> Q. Okay. Now Marcus [sic], is it correct that you were convicted of willful injury causing serious injury in 2011? A. Yes, I was.
> Q. And that's a felony offense? A. Yes it is.

Q. And you told your—well, you told the—the jury through your attorney, that you spent time in custody because of that? A. Yes I did.

On appeal, Goode argues that "[a]lthough it was clear that [his] status as a parolee would play a large role in his defense, Goode's attorney did not move in limine to exclude evidence of the specific crime for which Goode was on parole. Neither did counsel object when the State asked Goode about his conviction." Goode contends the quoted exchange requires a new trial. The State responds that defense counsel may have chosen not to object to the evidence of the specific crime "to avoid speculation that Goode had been convicted of something even more serious." In light of the defendant's extensive reliance on his being on parole, trial counsel may have chosen not to object to this one reference to willful injury.

"[W]e must evaluate trial counsel's actions from the perspective of when the decision was made—during the course of trial." *State v. Ondayog*, 722 N.W.2d 778, 785 (Iowa 2006). "The fact that a particular decision was made for tactical reasons does not, however, automatically immunize the decision from a Sixth Amendment challenge. That decision must still satisfy the ultimate test: 'whether under the entire record and totality of circumstances' counsel performed competently." *State v. Graves*, 668 N.W.2d 860, 881 (Iowa 2993) (citations omitted). "Nonetheless, we do not delve into trial tactics and strategy when they do not clearly appear to have been misguided. In other words, we will not reverse where counsel has made a reasonable decision concerning trial tactics and strategy, even if such judgments ultimately fail." *Ondayog*, 722 N.W.2d at 786. We preserve Goode's claim of ineffective assistance in regard to the failure

to object to the prior-conviction evidence for possible postconviction proceedings.

*See id.* at 787.

*C. Sentencing.*

Here, the district court sentenced Goode to a ten-year term of incarceration. The court noted that it had limited discretion when sentencing Goode:

> As everyone has mentioned, there is no choice as to your imprisonment. The only choice is between whether or not his sentence will be served concurrently with the prior sentence that was already imposed or will be made to run consecutively to the first sentence that has been imposed in an earlier personal injury felony.
> . . . .
> At this time the Court will order that the sentences run concurrently based in part on the fact that this sentence will have to be 85 percent completed before you are eligible for release on this sentence. I would like to believe that upon your release you will be motivated to change your ways. However, in the event that you are released and fail to comply with the terms and conditions of probation at that time, I think you can think that this would be the last sympathetic gesture from the court system. The case that it will run concurrently with is his Lee County Cause Number FECR 7974.

But the written judgment entry provides: "The sentence imposed herein shall run consecutively with the sentence imposed in Lee County Cause Number FECR007974."

"[W]hen a judgment entry incorrectly differs from the oral rendition of the judgment merely as a result of clerical error, the trial court holds the inherent power to correct the judgment entry so that it will reflect the actual pronouncement of the court." *Hess*, 533 N.W.2d at 527. When the record unambiguously reflects that a clerical error has occurred—as it does here—"we

will direct the district court to enter a nunc pro tunc order to correct the judgment entry." *Id.*

Iowa Code section 908.10(1) provides that a "new sentence of imprisonment for conviction of a felony shall be served consecutively with the term imposed for the parole violation, unless a concurrent term of imprisonment is ordered by the court." Here, the court ordered a concurrent term. We remand to the district court for the entry of a nunc pro tunc order to correct the judgment entry to "accurately reflect what was unambiguously pronounced at the sentencing hearing." *Id.* at 528.

**AFFIRMED AND REMANDED.**