# IN THE COURT OF APPEALS OF IOWA

No. 18-0217
Filed January 23, 2019

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**KEVIN LEON POSTER, II,**
        Defendant-Appellant.

_____

Appeal from the Iowa District Court for Story County, Steven P. Van Marel, District Associate Judge.

A defendant appeals his conviction for operating while intoxicated, challenging the suppression ruling. **AFFIRMED.**

Mark C. Smith, State Appellate Defender, and Brenda J. Gohr, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee.

Considered by Tabor, P.J., Mullins, J., and Carr, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2019).

**TABOR, Presiding Judge.**

Kevin Poster appeals his conviction for operating while intoxicated (OWI). He contends the district court should have suppressed his breath test results because the arresting officer misinformed him about the right to an independent chemical test under Iowa Code section 321J.11 (2017). Because the record contains ample evidence to support the district court's alternative finding Poster was driving under the influence, we find any error in denying his motion to suppress was harmless. Accordingly, we affirm.

## I. Facts and Prior Proceedings

Patrolling the 500 block of Welch Avenue in Ames just before 2:30 a.m., Iowa State University Police Officer Natasha Greene noticed a red Pontiac almost ran a stop sign and proceeded dangerously through a busy intersection without yielding the right of way.[1] She pulled over the driver, Poster.

From the smell of alcohol on his breath and the way he answered her questions, Officer Greene suspected Poster was intoxicated. Poster admitted drinking two or three thirty-two ounce mugs of Bud Light in a ninety-minute span. He described his level of intoxication as a "warm stomach" feeling and "having fun."

Officer Greene administered field sobriety tests, during which Poster exhibited signs of impairment. Officer Greene arrested him for OWI. She took Poster to the armory building to book him into jail. Video monitors in the building captured their interactions. Poster agreed to provide a breath sample on the DataMaster, which showed his blood alcohol content at .138—over Iowa's legal

---

[1] In her report, the officer noted others cars were present and the location was "typically a well-traveled pedestrian intersection due to its close proximity to the bar area of Ames."

limit of .08. The State charged Poster by trial information with OWI first offense, a serious misdemeanor, in violation of Iowa Code section 321J.2.

Before trial, Poster moved to suppress the DataMaster result, asserting Officer Greene violated his right under section 321J.11 to an independent chemical test by misinforming him when blood and urine tests are available to suspects.

At the suppression hearing, Officer Greene described Poster as being "very chatty" while she filled out paperwork—asking her more questions "than I think any other arrestee or defendant I've met." She estimated he posed twenty questions on a range of different topics. Greene read Poster the implied-consent advisory. After several minutes, she asked him to sign the consent form. On the video recording, Poster can be heard saying he found the advisory to be "super confusing." Before he provided a breath sample, Poster broached the subject of other forms of testing.[2]

> POSTER: How often do you guys take, like, blood tests or, like, urine tests?
> GREENE: Urine tests reasonably often.
> POSTER: [Unintelligible.]
> GREENE: If we think there are other drugs on board.
> POSTER: That's what I was gonna ask when I was over here. I was, like, if someone was, like, high or something what would you make them do? [unintelligible] . . . okay. That has to be, like, a different—Would they come into this room or what would they?
> GREENE: They wouldn't pee in this room but, yes, they'd come into this room and then we'd go down to the bathroom and get a sample.
> POSTER: But blood test wise? You'd, like, [unintelligible.]
> GREENE: Oh no, we don't do blood tests here.
> POSTER: I was gonna say [unintelligible.]
> GREENE: Blood tests in Iowa, most often, is if they are unable to give a breath, like, if they are hospitalized. And if it's a serious

---

[2] The conversation was informal, and Greene and Poster occasionally spoke over each other. There is no transcript, but we can discern the following from the video recording.

accident involving injury or death, then you can request a PBT or request a [cough]—
    POSTER: Sure.
    GREENE: —blood sample.  Alright [unintelligible].

Officer Greene testified she did not view Poster's question as a request for an independent test.  She did not advise Poster further about his right to an independent chemical test.

The district court denied the motion to suppress, concluding the conversation could not reasonably be construed as a request for an independent chemical test.  The court offered this analysis:

> He was making conversation about what happens to people who get arrested for operating while intoxicated.  I don't think and I find he was not specifically asking or requesting anything about his case in particular.  It was just a general question about, obviously I'm taking a breath test here.  When do you do urine and blood tests?  And the officer gave a relatively decent answer.  It wasn't perfect because there are times when you can do an independent blood test and there are times you can force people to give blood, but I think she was attempting to answer his question.  So, first of all, I don't think that his statements could reasonably be construed as a request for an independent blood test.
> Then on the second point about whether or not the officer gave him such misleading information that he couldn't even ask for an independent blood test that he thought that was impossible, again, that conversation I don't think had anything to do with his case.  They were all questions and conversations about OWI arrests in general.  When he was asking about when blood is taken or when the police ask for blood or urine, I don't think that was related to his particular case.  He was just asking in general when would you do blood and urine as opposed to a breath test.

Poster waived his right to a jury trial and agreed to the district court adjudicating his guilt based on the minutes of testimony.  The court then concluded "by evidence beyond a reasonable doubt" Poster "operated a motor vehicle on October 13, 2017, in Story County, Iowa; and, secondly, that when he did so he was intoxicated."  The court specifically found Poster "was both under the influence

of alcohol and had a breath or blood alcohol level of over .08 percent or more."
Poster appeals, challenging only the suppression ruling.

## II. Scope and Standard of Review

Because the district court based its ruling on Iowa Code section 321J.11, we review the ruling on the motion to suppress for correction of legal error. *State v. Lukins*, 846 N.W.2d 902, 906 (Iowa 2014) (citing *State v. Madison*, 785 N.W.2d 706, 707–08 (Iowa 2010); *State v. Fischer*, 785 N.W.2d 697, 699 (Iowa 2010)). But reversible error may not be predicated upon a ruling admitting or excluding evidence unless a substantial right of the party is affected. *State v. Tyler*, 867 N.W.2d 136, 166 n.14 (Iowa 2015) (quoting Iowa R. Evid. 5.103).

## III. Analysis

Poster disputes the suppression ruling for two reasons. First, he asserts his question about urine and blood testing could be reasonably construed as a request for an independent chemical test. Second, he believes his question obligated Officer Greene to give him accurate information about his right to an independent test. Because her answer was misleading, Poster maintains the officer violated his statutory right.

Under Iowa Code section 321J.11, when a peace officer has reasonable grounds to believe a person has been operating while intoxicated, the peace officer "may take a specimen of a person's breath or urine for the purpose of determining the alcohol concentration." The section also provides, "The person may have an

independent chemical test or tests administered at the person's own expense in addition to any administered at the direction of a peace officer."[3]

Our supreme court interpreted this statutory right liberally in *Lukins*, explaining, "[A]ny statement that can be reasonably construed as a request for an independent chemical test is adequate to invoke the detainee's right to such a test." 846 N.W.2d at 909. A detainee is not "required to string together a precise formulation of words mirroring the statutory language in order to invoke his or her statutory right to an independent chemical test." *Id.*

*Lukins* set out an officer's obligation when a detainee requests an independent chemical test in less than precise language.[4] *Id.* When confronted with a "legally imprecise request," the officer "cannot stand mute and deny the request." *Id.* "Rather, if an imprecise statement, reasonably construed, implicates the statute, then the officer should inform the detainee of his or her right to an independent chemical test." *Id.*

Here, at the point of signing the implied consent form, Poster continued his inquisitive conversation with Officer Greene by asking "how often" the police take blood or urine tests. He also asked how those tests were administered.

On appeal, Poster argues under *Lukins* his questions about urine and blood tests "should have been considered a request for independent testing by the

---

[3] "Officers are not required to advise a defendant of the statutory right to an independent test." *State v. Wooton*, 577 N.W.2d 654, 655 (Iowa 1998).

[4] In *Lukins*, the court found a detainee who stated, "That seems really f***ing high. For four f***ing beers that seems . . . that seems really high" and asked, "[C]an I get a re-check . . . ? . . . . Can I get a re-blow . . . ?" after submitting a breath sample, while not entitled to a second Breathalyzer test, had adequately conveyed he wanted another test. 846 N.W.2d at 909–10. Under those circumstances, the officer "should have informed Lukins that he was entitled to an independent chemical test at his 'own expense in additional to' the Breathalyzer test." *Id.* at 910.

officer."[5] He asserts, "At the very least the officer had an obligation to provide Poster with accurate information regarding independent testing because of his questions."

The State contends Poster was just "curious" about when police would request a sample of urine or blood rather than breath and did not request independent testing under section 321J.11. Officer Greene's response, in the State's view, was appropriate and "she had no duty to digress into other explanations that did not bear on his actual inquiry."

Curiosity or fact-finding—whatever prompted Poster's questions about urine or blood testing—the *Lukins* court was clear it "disapproved of peace officers impeding detainees' access to rights guaranteed by the legislature." *Id.* But we need not reach that question here.

Regardless of whether the district court should have suppressed the Datamaster result, we accept the State's argument that reversal is unwarranted. The district court specifically found the minutes contained proof beyond a reasonable doubt under two independent theories for OWI. *See* Iowa Code § 321J.2(1)(a) ("under the influence of an alcoholic beverage"), (b) ("having an alcohol concentration of .08 or more"). "[A] person is 'under the influence' when the consumption of alcohol affects the person's reasoning or mental ability, impairs a person's judgment, visibly excites a person's emotions, or causes a person to

---

[5] Poster also points to the special concurrence in *State v. Daniel*, No. 16-0891, 2017 WL 706339, at *3 (Iowa Ct. App. Feb. 22, 2017) (Tabor, J., specially concurring), finding an officer's statement that he would only give a blood test "if he thought drugs were involved" was potentially misleading and suggesting once a suspect asked about the possibility of independent chemical testing, the officer had an obligation to inform the suspect of his rights under section 321J.11, or at a minimum, not to provide misinformation chilling any request for independent testing.

lose control of bodily actions." *State v. Truesdell*, 679 N.W.2d 611, 616 (Iowa 2004).

Substantial evidence supported the court's under-the-influence finding. Poster's careless driving caught the officer's attention. *See id.* He acknowledged consuming a significant amount of alcohol in a relatively short timeframe before the traffic stop. *See id.* The results of the field sobriety tests indicated intoxication. And his chatty demeanor at the armory showed a visible excitement of his emotions. *See id.* Under these circumstances involving a bench trial on stipulated minutes of testimony, the district court's ruling admitting the DataMaster test result did not affect Poster's substantial rights. *See Tyler*, 867 N.W.2d at 166 n.14. Any violation of Poster's rights under section 321J.11 was harmless error. *Cf. State v. Garrity*, 765 N.W.2d 592, 598 (Iowa 2009) (analyzing violation of Iowa Code section 804.20). Poster is not entitled to a new trial.

**AFFIRMED.**