# IN THE COURT OF APPEALS OF IOWA

No. 20-0614
Filed September 1, 2021

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**GARY CHARLES WOOD JR.,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Polk County, Michael D. Huppert,

Judge.


Gary Wood Jr. appeals his conviction of suborning perjury. **REVERSED**

**AND REMANDED FOR ENTRY OF JUDGMENT OF ACQUITTAL.**


John C. Heinicke of Kragnes & Associates, P.C., Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Benjamin Parrott, Assistant

Attorney General, for appellee.


Considered by Mullins, P.J., May, J., and Doyle. S.J.*

* Senior judge assigned by order pursuant to Iowa Code section 602.9206

(2021).

**DOYLE, Senior Judge.**

Gary Wood Jr. appeals his conviction of suborning perjury under Iowa Code section 720.3 (2019).[1]  Among other things, he claims there was insufficient evidence to convict him.  After a close review of the record we find insufficient evidence to support a guilty verdict.

## I.    Factual Background.

In June 2019, a Des Moines police officer responded to a 911 call and found M.M. at her residence "terrified and frightened" and sporting a black eye.  M.M. reported Wood struck her in the face six days earlier.  Wood was previously thrice convicted of domestic abuse assault, second offense, for incidents involving M.M.  He was on probation for the third offense when he committed the fourth.  Wood was arrested and taken to jail.  He was charged with domestic abuse assault, third or subsequent offense, and also with first-degree burglary and willful injury.  A no-contact order was issued.

Trial of the domestic abuse assault charge was scheduled for October 21, 2019.  A clerk of court's employee testified that on October 15 an order was entered to set a plea and sentencing hearing.  Apparently there was no plea, and on October 16, the trial was rescheduled to October 30.  In looking at the docket, she testified that it did not look like there was any hearing on October 21.  A trial apparently took place on October 30.  No return of service of a subpoena for M.M. for the October 30 trial was filed.[2]

---

[1] We cannot consider Wood's August 9, 2021 pro se filing.  *See* Iowa Code § 814.6A(1) (2021).

[2] Whether a subpoena was issued for M.M. to appear at the October 30 trial is not a part of the record before us.

While awaiting trial in jail, Wood called M.M. more than a hundred times—despite the no-contact order forbidding such communications. The phone calls were recorded. Based on those recordings, Wood was charged with obstructing prosecution, an aggravated misdemeanor, in violation of section 719.3(1). The preliminary complaint alleged there was a no-contact order and Wood called the protected party, M.M., from the jail:

> In the call, the protected party stated she was coming to Court on October 21, 2019, the Defendant told [M.M.] not to come to Court because that date was trial. The protected party is a material witness to the case. [M.M.] is the victim of Domestic Abuse Assault Charge.

The charge was later amended to suborning perjury, in violation of section 720.3, a class "D" felony. The State also sought the habitual offender enhancement through application of the habitual offender provision under section 902.8. The case went to trial.

Snippets of two of Wood's conversations with M.M. were played for the jury:[3]

**October 6, 2019, recording.**

M.M.: I want you to come home.
Wood: I, Yeah, I'm, I'll be shocked if I don't. So.
M.M.: I will be there, I'm coming to your.
Wood: Alright.
M.M.: And I got **(**unintelligible).
Wood: No, no you can't.
M.M.: Why?
Wood: That's the day of the trial.
M.M.: No it says it's your hearing.
. . .
M.M.: It says the 21st at 9:00 am.
Wood: That's the trial.

---

[3] No written transcripts of the calls were furnished to the jury. The transcripts in this opinion were prepared by the author of this opinion and include the entirety of the recorded snippets played for the jury.

M.M.: But it says for your probation hearing.
Wood: That is trial.
M.M.: I know but it doesn't say that and it doesn't say that on Iowa Courts Online.
. . .
Wood: Alright.
M.M.: I love you baby, I can't wait.
Wood: I love you too, alright.
M.M.: So I'll just wait for you to hear from you.
Wood: Yeah, I'll call you on the 21st when I'm when.
M.M.: Ahhhhh, two weeks.
Wood: Yeah, (Unintelligible [We're?]) not gonna give these people no more fucking ammo.
M.M.: Okay I love you.
Wood: Alright.
M.M.: I get it. I love you.


**October 10, 2019, recording.**

Wood. Hello.
M.M.: Hi baby.
Wood: Hey, listen to me real carefully okay?
M.M.: Okay.
Wood: On the 21st, um, that's not my probation violation hearing. So when I am done with court on the 21st, I will call you.
M.M.: Okay.
Wood: Okay.
. . .
Wood: I will call you after it's over.
M.M.: Okay. So don't show up?
Wood: No.

An employee of a private company that set up the telephone and recording system at the jail testified. She worked out of an office in the jail, and her main duty was to listen to inmate telephone conversations. In preparing to testify, she listened to about a hundred calls between Wood and M.M. When asked to offer her observations of Wood's demeanor in those calls, the telephone company employee testified, over defense counsel's objection:

Well, he's very demanding. He wants her to do things for him. For example, he needed—when he thought he was going to be released,

he needed that Internet. He whatever it took, she needed get that Internet on. He needed money on his books. She was like clockwork. So if he goes to his account and it's not there, he is concerned and he wants to know where that money is. And then once again, telling her not to show up for court. He professed his love to her a lot, as well as she did him, but he also made a lot of promises to her of a happy life when all this was over with. He just—in my opinion, he played a lot on her emotion.

On cross-examination, she testified:

Q. I won't expect your memory to be perfect. I also sympathize with you, that couldn't have been fun. But at any point in time during those phone calls, do you recall Mr. Wood ever telling [M.M.] what to say if she testifies? A. No, I don't.

Q. Did he ever specifically instruct her not just to come to court but specifically not to testify? A. No. He just said—no, no. He didn't say that. Just don't come to court.

Q. Did he ever instruct her to ignore a validly served subpoena? A. That I did not hear anything about on any of those calls.

Q. Did he ever tell her not to speak to law enforcement? A. No.

Q. Did he ever offer her a bribe not to testify? A. Not to my recollection, no.

Q. Did he ever threaten her with anything not to testify? A. No.

Q. And with regard to those two phone calls on October 6 and October 10, to your knowledge had [M.M.] been subpoenaed to testify in Mr. Wood's trial? A. I'm not aware.

Q. Yeah. The calls we heard on October 6 and October 10th, they were about a court hearing occurring on 21st; correct? A. Yeah.

Q. Did you ever overhear a similar conversation as relates to Mr. Wood's court date on October 30th, the ultimate trial date? A. No. I just—no, I don't.

Q. So he never instructed [M.M.] not to appear at the trial date on October 30th? A. Right. Just this one here.

A Polk County Sheriff's sergeant testified she listened to the October 6 telephone conversation between Wood and M.M. On cross-examination she was asked:

Q. Was one of the topics of conversation within that phone call whether there would be some sort of a plea deal that Mr. Wood would be accepting? A. I think he was under the impression that there was going to be a plea deal or something that took place so he would be out of jail at that time.

Q. So at least at that time the parties were discussing the matter, they were discussing a plea deal; correct? A. I don't know if it was actually a plea deal. I just think he was getting—he just thought he was getting out. I'm not sure how.

. . . .

Q. And so what do you remember then about the discussion with the plea deal? A. I just know that he thought he was getting out.

Q. Okay. And that was after he accepted some sort of a plea? A. Plea deal, yeah.

Wood moved for judgment of acquittal at the close of the State's case. It was denied. His renewed motion was denied at the close of all the evidence. The jury found Wood guilty as charged. He again moved in arrest of judgment claiming, among other things, the jury verdict was contrary to the weight of the evidence. The motion was denied after a hearing. Wood was sentenced to fifteen years in prison, with a three-year minimum under the section 908.2 habitual offender enhancement. Wood appeals.

## II. Standard of Review.

We review challenges to the sufficiency of evidence presented at trial for a correction of errors at law. *State v. Sanford*, 814 N.W.2d 611, 615 (Iowa 2012). The essential question before the court on a challenge to sufficiency of the evidence is whether there was substantial evidence to support a guilty verdict beyond a reasonable doubt. *State v. Kern*, 831 N.W.2d 149, 158 (Iowa 2013). In reviewing a challenge to the sufficiency of evidence supporting a guilty verdict, we consider "all of the record evidence viewed in the light most favorable to the State, including all reasonable inferences that may be fairly drawn from the evidence. *State v. Thomas*, 847 N.W.2d 438, 442 (Iowa 2014).

III.     Analysis.

A. Sufficiency of the Evidence for Conviction.

Wood argues the evidence presented at trial is insufficient to support the jury's guilty verdict.  Wood did not object to the instructions given to the jury at trial.  Thus, the jury instructions became the law of the case for purposes of our review of the record for sufficiency of the evidence.  *State v. Canal*, 773 N.W.2d 528, 530 (Iowa 2009).   The marshalling instruction set forth the elements of suborning perjury as follows:

> The State must prove all of these elements of Suborning Perjury:
>
>      1. On or about October 6, 2019, the defendant reasonably believed that [M.M.] would be placed under oath to make a statement of fact.
>      2. The defendant procured or offered an inducement to [M.M.] to conceal material facts known to her.
>      If the State has proved both of the elements, the defendant is guilty of Suborning Perjury. If the State has failed to prove either of the elements, the defendant is not guilty.

The instructions defined procure and induce as follows:

> "Procure" means to initiate or bring about an event; to cause something to be done; to contrive or acquire.
> "Induce" means to offer something of benefit or value or a reason, which would influence, persuade, coax, encourage or invite a person to act.

Concerning the first element, what Wood reasonably believed is much like specific intent—it is seldom capable of direct proof.  *See State v. Ernst*, 954 N.W.2d 50, 55 (Iowa 2021).  So it comes as no surprise that there is no direct proof about Wood's belief that M.M. would be placed under oath to make a statement of fact.  That there is no direct evidence Wood knew M.M. was or would be subpoenaed to testify in the domestic abuse assault case is not fatal to the State's case.  Because

the law does not distinguish between direct evidence and circumstantial evidence of a crime, a defendant may be convicted solely on circumstantial evidence if it is sufficiently compelling to convince a judge or jury of the defendant's guilt beyond a reasonable doubt. *State v. Tipton*, 897 N.W.2d 653, 692 (Iowa 2017). So whether Wood reasonably believed M.M. would be called to testify against him can be shown by circumstantial evidence and the reasonable inferences drawn from that evidence. *See Ernst*, 954 N.W.2d at 55. Wood was no stranger to the criminal justice system. M.M. was the complaining witness in his domestic abuse assault case. She was listed as a witness in the minutes of testimony. It takes no genius, or lawyer for that matter, to figure out that M.M. would be called to testify at trial. We conclude there is sufficient evidence to meet the first element of the suborning perjury offense: that Wood reasonably believed M.M. would be placed under oath to make a statement of fact.

The second element—whether Wood offered an inducement to M.M. to conceal material facts known to her—is more problematic.[4] The snippets of the telephone conversations played to the jury are a bit confusing, but it may be reasonably inferred from them that Wood asked M.M. to not show up at court on October 21st. But does that evidence establish that Wood offered something of benefit or value or a reason, which would influence, persuade, coax, encourage or invite M.M. to not show up? We think not.

---

[4] Whether Wood procured M.M. to conceal material facts known to her is not at issue as there is no proof in the record before us that M.M. was subpoenaed and failed to show up at Wood's domestic abuse assault trial or that she gave false testimony.

Neither Wood nor M.M. testified at the suborning perjury trial. That leaves us with the testimony of the telephone company employee. After listening to about one hundred calls between Wood and M.M., the telephone company employee opined Wood's demeanor during the calls was very demanding and that he played on M.M.'s emotions. The telephone company employee offered no testimony on any specific offer of benefit or reason by Wood which would influence, persuade, coax, encourage, or invite M.M. to ignore a subpoena. That Wood was generally demanding is not enough. That he generally played on M.M's emotions is not enough. That he generally professed his love for M.M. is not enough. That he made a lot of promises to M.M. of a happy life "when all this was over with" is not enough. None of the witness's opinions and observations were tied to Wood's request that M.M. not show up at court on October 21st. At best there is only an inference that Wood gave a reason to M.M. that would motivate her to ignore a subpoena and not show up at Wood's domestic abuse assault trial. That inference is not enough.

To be sure, "[j]uries must necessarily make inferences when finding facts based on circumstantial evidence." *Ernst*, 954 N.W.2d at 59. But "inferences drawn from the evidence must raise a fair inference of guilt on each essential element." *State v. Truesdell*, 679 N.W.2d 611, 618–19 (Iowa 2004). "Inferences that do no more 'than create speculation, suspicion, or conjecture' do not create a fair inference of guilt." *Id.* "Under these standards, when two reasonable inferences can be drawn from a piece of evidence, we believe such evidence only gives rise to a suspicion, and, without additional evidence, is insufficient to support guilt." *Id.* So even assuming the evidence supports two reasonable inferences—

that no inducement was offered or that an inducement was offered—the "jury would necessarily be required to rely upon conjecture to reach a verdict." *Id.* Some other evidence of guilt needs to support the conviction. *Id.* There is none in the record before us.

We conclude the record does not reveal substantial evidence to support a finding that Wood offered an inducement to M.M. to conceal material facts known to her. Thus, we find there was insufficient evidence to support a conviction under Iowa Code section 720.3. As a result, we reverse Wood's conviction and remand for an entry of judgment of acquittal. *See State v. Chapman*, 944 N.W.2d 864, 875 (Iowa 2020).

In view of our disposition of the case we need not address Wood's remaining arguments.

**REVERSED AND REMANDED FOR ENTRY OF JUDGMENT OF ACQUITTAL.**

Mullins, P.J., concurs; May, J., dissents.

**MAY, Judge** (dissenting).

Sufficient evidence supports Gary Wood's conviction for suborning perjury. I respectfully dissent.

Although I disagree with the majority's decision to reverse Wood's conviction, we agree on most other things. For example, I agree there was sufficient evidence for the jury to find Wood reasonably believed M.M. would be placed under oath to testify against Wood. After all, M.M. was the complaining witness—the victim—in Wood's domestic abuse assault case. I also agree there was sufficient evidence for the jury to find Wood asked M.M. not to show up for Wood's trial—where M.M. would be placed under oath to testify against Wood.

Really, my only point of disagreement with the majority is whether there was sufficient evidence that Wood offered M.M. an "inducement" not to testify. I believe there was. The jury was instructed that "induce" means "to offer something of benefit or value or a reason, which would influence, persuade, coax, encourage or invite a person to act." Viewed in the light most favorable to the verdict, the evidence showed Wood "offered something of benefit or value" to M.M., namely, a "happy life" together "once" his criminal troubles were favorably resolved ("once all this was over with"). This offer would naturally "persuade, coax, encourage or [at least] invite" M.M., who was still interested in a relationship with Wood, not to testify against Wood—because her testimony would give the State "fucking ammo" to convict Wood of a crime and impede their future "happy life" together. So I think a jury could readily conclude that Wood offered an "inducement"—the promise of a "happy life" together—for M.M. not to testify against Wood.

Because there was sufficient evidence, we should affirm Wood's conviction.

I respectfully dissent.