# IN THE COURT OF APPEALS OF IOWA

No. 21-0446
Filed March 2, 2022

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**CURTIS LEE WALTER,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Tama County, Nicholas Scott, District Associate Judge.

Curtis Walter appeals his conviction for operating while intoxicated. **AFFIRMED.**

Martha J. Lucey, State Appellate Defender, and Josh Irwin, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Darrel Mullins, Assistant Attorney General, for appellee.

Considered by May, P.J., and Schumacher and Badding, JJ.

**BADDING, Judge.**

Following a bench trial,[1] the district court found Curtis Walter guilty of what it coined as "driving while drugged" in violation of Iowa Code section 321J.2(1)(a) (2019). Walter appeals, claiming the evidence supporting his conviction is insufficient to show he was under the influence of a drug.

**I.      Background Facts and Proceedings**

On July 3, 2019, a deputy from the Tama County Sheriff's Office was on routine patrol when he noticed a maroon Buick he was traveling behind "cross over the fog line on multiple occasions." The deputy activated his overhead lights to initiate a traffic stop. The vehicle immediately signaled and pulled over. Walter was identified as the driver. The deputy's incident report, which was attached to the minutes of evidence, noted Walter was "excited and restless." But Walter told the deputy the reason for his driving was that he "was tired and had been driving awhile." According to the deputy, Walter's speech was also "thick and slurred,"[2] and his eyes were "bloodshot and watery."

The deputy asked Walter to submit to field sobriety testing, and Walter obliged. Walter passed the horizontal and vertical gaze nystagmus tests, but scored clues on the one-legged stand, the walk-and-turn, lack-of-convergence, and Modified Romberg tests. During the testing, Walker told the deputy that as a

---

[1] Walter stipulated to a trial on the minutes of evidence and exhibits that included footage from the arresting deputy's dash camera, body camera, and in-car camera, as well as a letter from Walter's dentist.

[2] The letter from Walter's dentist explained Walter "is currently experiencing difficulty with speaking and difficulty with the pronunciation of words due [to] the recent removal of his teeth." It also noted Walter's "lack of dentition has rendered him with altered speech and serious issues with mastication and swallowing."

semi-truck driver, he learned to keep his "car close to the white line." He also explained he was distracted by how fast the deputy's vehicle came up behind him before backing off.

After testing, the deputy began explaining his suspicion that Walter was impaired. Walter interjected with a "long explanation" about his financial issues and hope that the deputy would let him go. The deputy continued, telling Walter that he was concerned "there might be some drug use going on." Walter immediately denied any drug use, informing the deputy he had been clean from methamphetamine for nine months. He also said that he was on parole and subject to drug testing. When the deputy reiterated that he "was getting some signs of impairment," Walter said, "I'm tired. I'm nervous. That's it." The deputy asked Walter to provide a urine sample at the jail. Walter replied, "I can't do that," and complained about the logistics of having to call someone for a ride. The deputy conceded, "It might be that you're tired," before giving Walter another option: the deputy told Walter that he was a drug recognition expert and offered to put him "through a full evaluation." After some brief back and forth, Walter refused any further testing.

The deputy placed Walter in handcuffs so that they could continue on to the jail to complete the investigation. Before leaving, Walter asked the deputy if he could get his phone and some money from the vehicle. Accompanied by Walter, the deputy found the money, along with a "black zipper pouch," in the center console. Inside the pouch was a small glass container marked "RUSH." The deputy questioned Walter: "What's this stuff?" Walter responded: "Oh, RUSH. You smell it and it makes you kind of get a head rush." When asked if he had

"been smelling that stuff today," Walter responded, "A couple times," but explained "it doesn't stay with you very long." The deputy asked if he smelled it while he was driving, and Walter answered he smelled it when he left the store.

The deputy put Walter in his patrol vehicle, read him his *Miranda* rights, and transported him to the jail. According to the deputy's incident report, Walter had trouble staying awake during the drive and "was slouched over leaning forward." On the way to the jail, the deputy questioned Walter more about the RUSH, and Walter explained, "It like makes the blood rush to your head, okay. You get a warm feeling." At the jail, after reading Walter the implied-consent advisory, the deputy requested a urine sample. Walter refused again. Upon investigation, the deputy learned the bottle found in Walter's car contained amyl nitrate, "which qualifies as an inhalant on the DRE drug matrix" and "is commonly used for a sudden high that subsides quickly."

Walter was charged by trial information with operating while intoxicated, and the matter proceeded to a bench trial on the minutes. In its written verdict, the district court found Walter guilty of operating a motor vehicle while under the influence of a drug, in violation of Iowa Code section 321J.2(1)(a). The court reasoned:

> The officer in this case is a drug recognition expert who observed the defendant's vehicle cross the fog line on multiple occasions. Upon stopping the vehicle, the deputy made observations of the defendant's demeanor that he used to conclude the defendant was possibly driving under the influence of drugs. The deputy found a drug, amyl nitrate, in the vehicle. The defendant admitted to using it to get a "rush." The defendant had a hard time staying awake at the jail. The deputy then asked the defendant to provide a specimen for drug testing. The defendant stated he could not do that and, eventually, refused the test.

> The Court may consider the defendant's refusal to submit to a chemical test in its verdict. *See* Iowa Code § 321J.16.[3] The defendant's test refusal and admission he had used amyl nitrate the day in question are indicative that the defendant had drugs in his system. There are other indications the defendant was driving while drugged: he exhibited poor driving by crossing the fog line on multiple occasions, the defendant had bloodshot and watery eyes, he was excited and restless, and he experienced difficulty staying awake once at the jail.

Walter filed a combined motion in arrest of judgment and for a new trial, asserting the verdict was contrary to law or evidence and judgment could not be entered based on the record as a whole. The motions were denied, and Walter appealed following the imposition of sentence.

## II.     Standard of Review

"We review a claim of insufficient evidence in a bench trial just as we do in a jury trial." *State v. Myers*, 924 N.W.2d 823, 827 (Iowa 2019). "If the verdict is supported by substantial evidence, we will affirm." *Id.* (citation omitted). In making that determination, we review "all the evidence and the record in the light most favorable to the trial court's decision." *Id.* (citation omitted). Because the question is simply whether the evidence was sufficient to support the conviction, "our review of challenges to the sufficiency of the evidence is for errors at law." *Id.*

## III.     Analysis

A person is guilty of violating section 321J.2(1)(a) if the person operates a motor vehicle while "under the influence of an alcoholic beverage or other drug or a combination of such substances." Walter challenges the sufficiency of the

---

[3] This statute provides: "If a person refuses to submit to a chemical test, proof of refusal is admissible in any civil or criminal action or proceeding arising out of acts alleged to have been committed while the person was operating a motor vehicle in violation of section 321J.2 . . . ." Iowa Code § 321J.16.

evidence only as it relates to whether he was "under the influence" of a drug. "[A] person is 'under the influence' when the [drug] affects the person's reasoning or mental ability, impairs a person's judgment, visibly excites a person's emotions, or causes a person to lose control of bodily actions." *State v. Price*, 692 N.W.2d 1, 3 (Iowa 2005) (quoting *State v. Truesdell*, 679 N.W.2d 611, 616 (Iowa 2004)). As such, "[t]he conduct and demeanor of a person are important considerations." *Myers*, 924 N.W.2d at 831.

Walter individually scrutinizes each of the district court's reasons for concluding he was under the influence—the manner of his driving, the appearance of his eyes, the nature of his speech, his demeanor, his refusal to submit to chemical testing, his use of the substance, and his difficulty staying awake.[4] In doing so, he offers innocent explanations for each of these indicators of impairment. But being under the influence "is an equally likely explanation." *See State v. Turner*, No. 16-1241, 2017 WL 4049455, at *6 (Iowa Ct. App. Sept. 13, 2017).

For instance, while Walter agrees he crossed the fog line more than once, he claims that "he did not do so suddenly or egregiously," even though the video shows Walter veered so far over the line as to hit a rumble strip before returning to his lane. *See State v. Dominguez*, 482 N.W.2d 390, 392 (Iowa 1992) (stating a person's manner of driving is relevant evidence to be considered in determining whether the person was under the influence). As for the condition of his eyes,

---

[4] It's true, as Walter points out, that the evidence submitted to the district court showed Walter had trouble staying awake on the way to jail, not at the jail itself as the court found. Regardless, there was evidence Walter had trouble staying awake.

Walter asserts the video shows that his eyes "are visibly white, not bloodshot." The video is inconclusive at best, so the deputy's in-person observation is a better indicator on this point. *See State v. Shannon*, No. 17-0717, 2018 WL 1182561, at *2 (Iowa Ct. App. Mar. 7, 2018) (finding officer's observation of physical signs of impairment based on training provided substantial evidence the subject was under the influence). And while Walter's "bloodshot, watery eyes" could be explained by fatigue, as Walter claims, a reasonable factfinder could also conclude it was caused by being under the influence.

Turning to Walter's speech, the video does disclose some slurred, delayed, and mumbled speech on Walter's part. Though that could be due to Walter's dental issues, those issues do not explain away several indicators of impairment during field sobriety testing, which Walter does not address. *See State v. Pieper*, 432 N.W.2d 701, 704 (Iowa Ct. App. 1988) (stating performance on field sobriety tests can be evidence that a person is under the influence).

With respect to his "other conduct," Walter argues the video shows he had a "calm, compliant demeanor," not "excited and restless" as described by the deputy. While the video does not provide a full picture of Walter's physical mannerisms, it does show Walter was nervous and agitated at times. He was also overly talkative during the encounter, at times interrupting the deputy to point out the beautiful view and at other times going off on a tangent about his finances or his admiration of the deputy's gun. The video also does not show how Walter was situated during the ride to the jail. Walter uses that, along with the fact that he talked to the deputy during the ride, to challenge the deputy's observation that he

had trouble staying awake. But his conversation with the deputy was on and off, and Walter was admittedly tired.

Walter next asserts his refusal to submit to testing is not alone sufficient evidence to support his conviction. That may be, but the refusal is just one of many permissible considerations in play in this case. In addition to those just discussed, other considerations include the substance found in Walter's vehicle. Walter complains that it was not submitted for testing and that the evidence did not establish "*when* [he] used the substance." But he agrees testing of the substance was not required. *See State v. Orr*, No. 05-1864, 2006 WL 2419198, at *2 (Iowa Ct. App. Aug. 23, 2006) ("A person may be found guilty under section 321J.2(1)(a) in the absence of admissible evidence from chemical tests."). And he does not challenge whether the substance was a drug within the meaning of the statute. *Cf. State v. Bond*, 493 N.W.2d 826, 828 (Iowa 1992). Walter himself explained the effect of the substance, which was confirmed by the deputy's research, and he admitted using the substance sometime before he started driving.

At the end of the day, "the existence of evidence which might support a different verdict does not negate the existence of substantial evidence sufficient to support the verdict in this case." *State v. Brandt*, No. 05-0368, 2006 WL 334245, at *3 (Iowa Ct. App. Feb. 15, 2006) (citing *State v. Frake*, 450 N.W.2d 817, 818–19 (Iowa 1990)). It is not the province of this court "to resolve conflicts in the evidence, to pass upon the credibility of witnesses, to determine the plausibility of explanations, or to weigh the evidence," as Walter would have us do here. *State v. Musser*, 721 N.W.2d 758, 761 (Iowa 2006) (citation omitted).

Viewed through that lens, and in the light most favorable to the State, the foregoing circumstances provided substantial evidence for the court to conclude the drug affected Walter's reasoning or mental ability, impaired his judgment, excited his emotions, or caused him to lose control of bodily functions. *See Truesdell*, 679 N.W.2d at 616. We accordingly find the evidence sufficient to support Walter's conviction for operating while intoxicated in violation of Iowa Code section 321J.2(1)(a).

**AFFIRMED.**